Matthew J. Matern, SBN 159798
  mmatern@maternlawgroup.com
Scott A. Brooks, SBN 160115
  sbrooks@maternlawgroup.com
MATERN LAW GROUP, PC
1230 Rosecrans Avenue, Suite 200
Manhattan Beach, CA 90266
Telephone: 310.531.1900
Facsimile: 310.531.1901
Attorneys for Plaintiff Nancy Schlieser

Jason J. Thompson, *pro hac vice*
  jthompson@sommerspc.com
Trenton R. Kashima, SBN 277924
  tkashima@sommerspc.com
SOMMERS SCHWARTZ, PC
1 Towne Square, #1700
Southfield, MI 48076
Telephone: 248.355.0300
Facsimile: 248.436.8453
Attorneys for Plaintiff Christian Van Cleave

[Additional counsel on following page]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NANCY SCHLIESER, an individual, on behalf of herself and on behalf of all persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SUNRISE SENIOR LIVING MANAGEMENT, INC., a Virginia Corporation; and DOES 1-50, Inclusive,<br><br>Defendants. | Case No. 8:19-cv-00443 JAK (PLAx)<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: December 7, 2020<br>Time: 8:30 a.m.<br>Ctrm: 10B |

CHRISTIAN VAN CLEAVE, an
individual, on behalf of himself and on
behalf of all persons similarly
situated,

          Plaintiff,

v.

SUNRISE SENIOR LIVING
MANAGEMENT, INC., a Virginia
Corporation; and DOES 1-50, Inclusive,

          Defendants.

Case No: 3:19-cv-00044-L-NLS

Shani O. Zakay, SBN 277924
  shani@zakaylaw.com
ZAKAY LAW GROUP, APLC
3990 Old Town Ave., Ste. C204
San Diego, CA  92110
Telephone:  619.255.9047
Facsimile:   858.404.9203
Attorneys for Plaintiff Christian Van Cleave

Jean Claude Lapuyade, SBN 248676
  jlapuyade@jcl-lawfirm.com
THE JCL LAW FIRM, APC
3990 Old Town Ave., Suite C204
San Diego, CA 92110
Telephone:  619.599.8292
Facsimile:   619.599.8291
Attorneys for Plaintiff Christian Van Cleave

PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on December 7, 2020 at 8:30 a.m., in Courtroom 10B of the United States District Court for the Central District of California located at 350 W. First Street, Los Angeles, California, Plaintiffs Nancy Schlieser and Christian Van Cleave ("Plaintiffs"), individually and on behalf of all others similarly situated will, and hereby do, move the Court as follows:

1.    To preliminarily approve the Stipulation of Class Action Settlement and Release ("Settlement Agreement," Exh. 1 to Declaration of Matthew J. Matern) between Plaintiffs Nancy Schlieser and Christian Van Cleave and Defendant Sunrise Senior Living Management, Inc.;

2.    To certify a Class for settlement purposes only, defined as "all persons who were employed in non-exempt positions at Sunrise's California communities at any time during the period from July 1, 2016 to June 15, 2020";

3.    To set dates for the submission of Settlement Class Member opt-outs and objections;

4.    To set the date for the fairness hearing regarding final approval of the Settlement Agreement, Class Representative Enhancement Payments, Settlement Administrator's fees; and Class Counsel's motion for an award of attorneys' fees and costs; and

5.    To approve the form and authorize the mailing of the proposed Notice of Settlement.

This motion is made on the grounds that the Settlement Agreement, which provides for a *non-reversionary* payment of $2,450,000.00, "is the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval," such that preliminary approval is appropriate. *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) quoting *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F.

PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

Supp.2d 561, 570 n.12 (E.D. Pa. 2001). The proposed Notice of Settlement (Exh. A to Agreement) complies with due process requirements and is the "best notice that is practicable under the circumstances," as it provides Class Members an opportunity to fully assess the Settlement Agreement, including Plaintiffs' motion for attorneys' fees and costs, before deciding whether to opt-out or submit objections. Fed. R. Civ. P. 23(c)(2)(B).

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, and the Declarations of Matthew J. Matern, Nancy Schlieser, Christian Van Cleave, Shani Zakay, Jean-Claude Lapuyade and Jason J. Thompson and exhibits, the complete file and records in this action, and such other evidence or oral argument that may be presented at the time of the hearing.

Dated: July 16, 2020                     MATERN LAW GROUP, PC


                                   By:    /s/ Matthew J. Matern
                                         Matthew J. Matern
                                         Scott A. Brooks
                                         Attorneys for plaintiff Nancy Schlieser,
                                         individually and on behalf of all others
                                         similarly situated


Date:  July 16, 2020                     SOMMERS SCHWARTZ, P.C.
                                         ZAKAY LAW GROUP, APLC
                                         THE JCL LAW FIRM, APC


                                   By:    /s/ Shani O. Zakay
                                         Shani O. Zakay
                                         Attorneys for plaintiff Christian Van Cleave,
                                         individually and on behalf of all others
                                         similarly situated

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................ 1

II.     FACTUAL BACKGROUND ..................................................................... 2

        A.      The *Van Cleave* Class and Collective Action ............................. 3

        B.      The *Schlieser* Action .................................................................... 3

        C.      The *Van Cleave* Representative Action ........................................ 4

        D.      Settlement-Related Filings ............................................................ 4

III.    SETTLEMENT ........................................................................................... 4

IV.     KEY SETTLEMENT TERMS ................................................................... 7

        A.      Definition of Settlement Class. ..................................................... 7

        B.      Allocation of the Settlement .......................................................... 7

                1.      Administration Costs. .......................................................... 7

                2.      Class Counsel's Attorneys' Fees and Costs. ...................... 7

                3.      Plaintiffs' Enhancement Payments. .................................... 7

                4.      PAGA Payment ..................................................................... 8

                5.      Allocation of Net Settlement Amount. ................................ 8

                6.      Payroll Taxes. ...................................................................... 9

                7.      Unapproved Funds. ............................................................. 9

                8.      Uncashed Checks. ............................................................. 10

        C.      Notice of the Proposed Settlement. ............................................. 10

        D.      Objections and Exclusion Requests. ........................................... 10

i

E.      Releases. ................................................................................. 11

F.      Posting of Settlement Agreement on Settlement Administrator's
        Website. .................................................................................. 11

V.      ARGUMENT ................................................................................... 11

        A.      The Court Should Conditionally Certify the Proposed Settlement
                Class. ...................................................................................... 11

                1.      Rule 23(a)(1): Numerosity. ............................................ 12

                2.      Rule 23(a)(2): Commonality. .......................................... 12

                3.      Rule 23(a)(3): Typicality. .............................................. 13

                4.      Rule 23(a)(4): Adequacy of Representation. ................... 13

        B.      The Predominance and Superiority Requirements of Rule 23(b)(3)
                are Satisfied. .......................................................................... 14

        C.      The Proposed Class Action Settlement Should Receive Preliminary
                Approval. ................................................................................ 15

                1.      Courts Review Class Action Settlements to Ensure
                        That the Terms are Fair, Adequate, and Reasonable .......... 15

                2.      The Settlement is the Product of Arms-Length, Non-
                        Collusive Negotiations, has no Obvious Deficiencies,
                        and Complies with the 2018 Amendments to
                        Preliminary Approval Requirements and Standards. ........ 16

                        a.      The Settlement is non-collusive. ......................... 17

                        b.      The Settlement contains no "obvious deficiencies." .......... 18

                        c.      The Settlement Is Well Within the Range of Possible
                                Approval. .......................................................... 20

1.    The Strength of Plaintiff's Case on the Merits Balanced Against the Risk, Expense, and Likely Duration of Further Litigation Weigh in Favor of the Settlement............................................................ 20

2.    The Overall Recovery Is Substantial......................... 22

3.    The Stage of the Proceedings. .................................... 22

4.    Highly Experienced Class Counsel Support the Settlement. ........................................................... 23

VI.   THE PAGA PENALTIES SECURED BY THE SETTLEMENT ARE GENUINE AND MEANINGFUL AND FULFILL PAGA'S UNDERLYING PURPOSE TO BENEFIT THE PUBLIC .............................. 23

VII.  THE PROPOSED NOTICE SHOULD BE APPROVED .................................. 24

VIII. SCHEDULE FOR FINAL APPROVAL ............................................................ 25

IX.   CONCLUSION .................................................................................................... 25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Ambriz v. Coca-Cola Co.*,
   No. CV 14-00715 SVW, 2015 WL 12683823
   (C.D. Cal. March 11, 2015) ................................................. 14, 16, 20, 23

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591 (1997)................................................................... 13

*Armstrong v. Davis*,
   275 F.3d 849 (9th Cir. 2001) ..................................................... 11

*Craft v. Cnty. of San Bernardino*,
   624 F.Supp.2d 1113 (C.D. Cal. 2008) ......................................... 19

*Espinosa v. California College of San Diego, Inc*.,
   No. 17 CV 744-MMA (BLM), 2018 WL 1705955 (S.D. Cal. April 9, 2018).......... 19

*Gardner v. GC Servs., LP*,
   No. 10-0997, 2011 WL 5244378 (S.D. Cal. Nov. 1, 2011) ....................... 20

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ............................................... 11, 14

*In re Tableware Antitrust Litig.*,
   484 F.Supp.2d 1078 (N.D. Cal. 2007)......................................... 16

*In re Vitamins Antitrust Litig.*,
   2001 WL 856292 (D.D.C. July 25, 2001) ..................................... 16

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ................................................. 15

*Misra v. Decision One Mortg. Co.*,
   No. 07-0994 DOC, 2009 WL 4581276 (C.D. Cal. Apr. 13, 2009) ................ 25

*Molski v. Gleich*,
    318 F.3d 937 (9th Cir. 2003) ....................................................... 16

*Morales v. Stevco, Inc.*,
    2011 WL 5511767 (E.D. Cal. Nov. 10, 2011)................................. 23

*Moshogiannis v. Security Consultants Grp., Inc.*,
    No. 10-05971, 2012 WL 423860 (N.D. Cal. Feb. 8, 2012)............... 20

*Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ............................................. 16, 21

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010) ..................................................... 13

*Salazar v. Sysco Central Cal., Inc.*,
    2017 WL 1135801 (E.D. Cal. Feb. 2, 2017) ................................. 23

*Stanton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ....................................................... 16

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ......................................................... 16

*Wright v. Linkus Enter., Inc.*,
    259 F.R.D. 468 (E.D. Cal. 2009) ................................................. 25

*Zinser v. Accufix Research Inst.*,
    253 F.3d 1180 (9th Cir. 2001) ..................................................... 11

**State Statutes**

Cal. Civil Code § 1542 ....................................................................... 11

Cal. Lab. Code, § 2699(i) .................................................................. 23

Cal. Lab. Code § 2699(l)(2)................................................................ 23

**Federal Rules**

Fed. R. Civ. P. 23 ............................................................................. 11

Fed. R. Civ. P. 23(b)(1), (2) or (3) ........................................................... 12

Fed. R. Civ. P. 23(c)(2)(B) ................................................................. 24, 25

Fed. R. Civ. P. 23(e)(1) ...................................................................... 15, 16

Fed. R. Civ. P. 23(e)(1)(A) ...................................................................... 15

Fed. R. Civ. P. 23(e)(2) ...................................................................... 15, 25

Fed. R. Civ. P. 23(a) ................................................................................ 11

Rule 23(a)(1) ........................................................................................... 12

Rule 23(a)(2) ........................................................................................... 12

Rule 23(a)(3) ........................................................................................... 13

Rule 23(a)(4) ..................................................................................... 13, 14

Rule 23(b) ............................................................................................... 11

Rule 23(b)(3) ............................................................................... 11, 14, 24

Rule 23(e) ........................................................................................... 15, 17

Rule 23(e)(3) ........................................................................................... 17

**Other Authorities**

Conte & Newberg, Newberg on Class Actions, § 7.20 (4th ed. 2002) .......................... 15

Conte & Newberg, Newberg on Class Actions, § 13.13 (5th ed., 2014) ..................... 16

Conte & Newberg, Newberg on Class Actions, § 11.25 (5th ed., 2014) ..................... 15

Manual for Complex Litigation § 21.632 (4th ed. 2004) .............................................. 15

Manual for Complex Litigation, Third § 30.41 (Federal Judicial Center 1995) .............. 2

Manual for Complex Litigation, Third § 30.41 at p. 237
    (Federal Judicial Center 1995) ................................................................. 16

1

Rubenstein, Conte and Newberg, Newberg on Class Actions at § 15:83 ...................... 19

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **MEMORANDUM OF POINTS AND AUTHORITIES**

2  **I.   INTRODUCTION**

3          Plaintiffs Nancy Schlieser ("Schlieser") and Christian Van Cleave ("Van Cleave")

4  (collectively, "Plaintiffs"), individually and on behalf of approximately 12,000 current

5  and former non-exempt California employees of Defendant Sunrise Senior Living

6  Management, Inc. ("Sunrise"), seek preliminary approval of the Joint Stipulation of Class

7  Action Settlement and Release (the "Settlement Agreement" or "Settlement"), attached as

8  Exhibit 1 to the Declaration of Matthew J. Matern filed herewith, which if approved,

9  would provide valuable monetary relief for those individuals.

10         The Settlement Agreement provides for a global, non-reversionary settlement in

11  the amount of $2,450,000.00 by which the Parties intend to fully resolve the following

12  separately pending but related actions:    (1) *Schlieser v. Sunrise Senior Living*

13  *Management, Inc.*, case no. 8:19-cv-00443 JAK (PLAx) (C.D. Cal.) (the "*Schlieser*

14  Action"); (2) *Van Cleave v. Sunrise Senior Living Management, Inc.*, case no. 3:19-cv-

15  00044-L-NLS (S.D. Cal.) (the "*Van Cleave* Class and Collective Action"); and (3)  *Van*

16  *Cleave v. Sunrise Senior Living Management, Inc.*, case no. 37-2019-00023231-CU-OE-

17  CTL (San Diego Sup. Ct.) (the "*Van Cleave* Representative Action") (collectively, the

18  "Actions").

19         Plaintiffs' claims include various causes of action brought under the California

20  Labor Code, including:    (1) alleged failure to include incentive compensation in

21  employees' regular rate of pay that was used to calculate overtime and meal and rest

22  period premiums; (2) alleged failure to provide meal periods and rest breaks; (3) alleged

23  failure to provide accurate wage statements; (4) derivative claims including alleged failure

24  to pay all wages due at time of termination, etc.; and (5) alleged violations of the California

25  Private Attorneys General Act of 2004 ("PAGA").  The Van Cleave Class and Collective

26  Action also includes claims brought pursuant to the Fair Labor Standards Act for alleged

27  failure to properly calculate employees' regular rate of pay for purposes of overtime.

28         If approved, the Settlement will result in an anticipated recovery of $1,510,612 for

1

the Class. In addition, $40,000.00 in PAGA penalties, 75% of which to be paid to California's Labor and Workforce Development Agency ("LWDA").

As discussed below, the proposed Settlement satisfies all criteria for preliminary settlement approval under federal law and falls within the range of reasonableness and "falls within the range of possible approval," the standard governing preliminary approval. *Manual for Complex Litigation, Third* § 30.41 (Federal Judicial Center 1995). It thus warrants notice to the putative Class of the Settlement terms and a final approval hearing to consider whether the Settlement is fair, reasonable and adequate.

An objective evaluation of the Settlement confirms that the relief negotiated on the Class' behalf is fair, reasonable, and valuable.  This Settlement was reached after two formal settlement conferences (one before Magistrate Judge Paul Abrams of the Central District of California and one before Magistrate Judge Allison Goddard of the Southern District of California), followed by a full-day private mediation with mediator Lisa Klerman and subsequent negotiations culminating in acceptance of a mediator's proposal. At the time the Settlement was reached, the Actions had been pending for more than eighteen months in three separate fora.  The Parties had engaged in substantial formal and informal discovery, investigation and analyses of potential outcomes. A class certification motion was pending in the *Schlieser* Action. The Settlement is thus the result of the Parties' well-informed understanding of the strengths and weakness of both the claims and the defenses and provides compensation to Class Members while avoiding the cost, risk, and delay of further litigation.

Plaintiffs request that the Court certify the proposed Settlement Class and grant preliminary approval of the Settlement Agreement, including its apportionment of funds pursuant to Plaintiffs' claims brought under the California Private Attorneys General Act ("PAGA").

## II.   FACTUAL BACKGROUND

Sunrise operates senior residential and assisted living communities, some 52 of which were or are located in various cities in California. Dkt. 1-1, ¶2; Matern Decl. ¶4.

2

### A.      The *Van Cleave* Class and Collective Action

Mr. Van Cleave was employed as a non-exempt Activities & Volunteer Coordinator at Sunrise's La Jolla community from July 2016 through November 2018. Declaration of Christian Van Cleave ¶¶2-4. On December 7, 2018, he filed the *Van Cleave* Class and Collective Action in the San Diego County Superior Court. Declaration of Jean-Claude Lapuyade ¶7. Sunrise removed the case to the Southern District of California pursuant to the Class Action Fairness Act ("CAFA"). *Id*.

The operative First Amended Collective and Class Action Complaint alleges claims under the FLSA and California Labor Code for alleged violation of the Unfair Competition law, failure to pay overtime wages, failure to provide meal periods and rest breaks, failure to provide accurate wage statements, and failure to pay all wages due at time of termination. Lapuyade Decl. ¶9.

### B.      The *Schlieser* Action

Ms. Schlieser worked in several non-exempt positions (including Marketing Assistant, Director of Community Relations, and Director of Sales) at Sunrise's Seal Beach community from May 2005 to February 2018. Dkt. 53-11, ¶¶2-3; Schlieser Decl. ¶2.

On January 17, 2019, Ms. Schlieser filed a class and representative action against Sunrise in the Orange County Superior Court on behalf of current and former non-exempt California employees alleging claims for:  failure to provide required meal periods; failure to provide rest breaks; failure to pay overtime; failure to pay minimum wages; failure to pay all wages due upon discharge; failure to maintain required records; failure to provide accurate wage statements; violation of the UCL; and for penalties pursuant to PAGA. Complaint, Dkt. 1-4 [Exh. B to Allyn Decl.]; Matern Decl. ¶6.[1] Sunrise removed the case

---

[1]  Ms. Schlieser also filed an individual employment discrimination and wrongful termination suit (case no. 8:19-cv-00517-JAK-PLA), which was also removed to this Court, and which is excepted from the terms of the Settlement. (Agreement ¶¶21, 51, 53, 69, 70(a); Matern Decl. ¶6.)

1   to this Court on March 6, 2019 pursuant to CAFA.[2] Dkt. 1; Matern Decl. ¶7.

2         **C.**     **The *Van Cleave* Representative Action**

3         On May 6, 2019, Mr. Van Cleave filed a complaint alleging claims pursuant to

4   PAGA complaint in San Diego County Superior Court. Lapuyade Decl. ¶11. The

5   Settlement provides that the Parties will seek to stay the *Van Cleave* Representative Action

6   until final approval of the Settlement, at which time the Parties will file a dismissal of that

7   Action. Settlement Agreement ¶29.

8         **D.**     **Settlement-Related Filings**

9         On July 14, 2020, the parties in the *Van Cleave* Class and Collective Action filed

10   a Joint Stipulation and Motion to Transfer Action (No. 3:19-cv000044-L-AHG, Dkt. 49)

11   (S.D. Cal.) requesting that the action be transferred to the Central District of California

12   for settlement approval purposes, which the Court granted on July 15, 2020. The parties

13   also filed a Joint Status Report and Notice of Settlement in the *Van Cleave* Representative

14   Action on that same day informing that court of the settlement and seeking a stay in that

15   action until final approval of the Settlement is entered. In conjunction with this Motion,

16   the Parties intend to facilitate transfer of the *Van Cleave* Class and Collective Action in

17   order to consolidate it with the *Schlieser* Action solely for settlement purposes. Settlement

18   Agreement ¶15. Mr. Van Cleave will amend his complaint to include the PAGA claim

19   asserted in the *Van Cleave* Representative Action*. Id.*

20   **III.**   **SETTLEMENT**

21         The Parties in the Actions participated in a combined mandatory settlement

22   conference with Magistrate Judge Paul L. Abrams on August 12, 2019. Dkt. 37; Matern

23   Decl. ¶16. Mr. Van Cleave and Sunrise also participated in an Early Neutral Evaluation

---

25   [2] The *Schlieser* Action was transferred to this Court following the filing of Sunrise's

26   Notice of Related Cases identifying several prior related matters, including *Shiferaw v. Sunrise Senior Living Management, Inc.*, No. 2:13-cv-02171-JAK-PLA; *Tameifuna v.*

27   *Sunrise Senior Living Management, Inc.* [2:13-cv-06294-JKA-PLA, consolidated with

28   *Shiferaw*]; and *Purnell v. Sunrise Senior Living Management, LLC* [8:10-cv-897-JAK-MLG]. Dkts. 9, 11.

1  Conference with Magistrate Judge Allison H. Goddard December 9, 2019. Lapuyade
2  Decl. ¶12; Matern Decl. ¶14. Prior to these conferences, Sunrise provided sample payroll
3  data, wage statements and other records to permit the Parties to evaluate their respective
4  positions. Matern Decl. ¶17. Plaintiffs retained an expert statistician who reviewed and
5  analyzed Sunrise's data and records and prepared analyses and damages models. Matern
6  Decl. ¶17.  Neither conference resulted in a settlement of the Actions.

7       The Parties then engaged in formal discovery, during which Sunrise produced a
8  large volume of documents, including payroll and timekeeping records, wage and hour
9  policies, meal period and rest break policies and wage statements, and other employment
10 documents. Matern Decl. ¶8. Sunrise agreed to let Ms. Schlieser use the data and
11 documents that had been provided for the settlement discussions, as well as depositions
12 and declarations from the *Shiferaw* action, and Ms. Schlieser also propounded
13 interrogatories. *Id.*

14      On September 19, 2019, Sunrise moved to dismiss Ms. Schlieser's complaint and
15 to strike certain allegations.  The motion was set to be heard in late-January, 2020. Dkt.
16 41; Matern Decl. ¶12.  In the meantime, in December 2019, Schlieser filed a motion for
17 class certification of a subset of the putative class. Dkt. 53; Matern Decl.¶¶9-11. Sunrise
18 stipulated to certification of a Regular Rate class of Directors of Sales and Associate
19 Directors of Sales relating to its alleged failure to include commissions and certain
20 incentive wages in those employees' regular rate of pay. *Id.* Ms. Schlieser sought
21 certification of a second Regular Rate class composed of Director of Sales, Associate
22 Director of Sales, and Director of Sales & Marketing aimed at the alleged practice of
23 calculating the overtime wages using the total number of hours worked instead of the legal
24 maximum number of regular hours worked. *Id.* Ms. Schlieser also sought to certify a third
25 Regular Rate class aimed at the alleged failure to include commissions and certain
26 incentive wages for all non-exempt employees. *Id.* The motion was supported by over 400
27 pages of documentary evidence including declarations, payroll records, deposition
28 testimony and other employment records. Dkt. 55-1 to 55-9; Matern Decl. ¶11.

The Parties continued settlement dialogue and agreed to participate in a combined mediation in the hopes of reaching a global settlement. Matern Decl. ¶16. In order to facilitate that mediation, the Parties requested that this Court stay the *Schlieser* Action pending the mediation. Dkt. 57.

In connection with the mediation, the Parties engaged in further informal discovery, including production of additional pay and time records for 4,536 employees representing 566,093 shifts and 133,676 workweeks. Matern Decl. ¶ 17. This allowed Plaintiffs' expert statistician to prepare additional detailed analyses. Matern Decl. ¶17.

On February 24, 2020, the Parties participated in a full-day mediation with respected neutral Lisa Klerman. Matern Decl. ¶16. The discussions were in good faith, but the Parties vigorously advocated their positions and no resolution was reached. *Id.* The settlement discussions continued after the day of the mediation, and Ms. Klerman made a mediator's proposal.  The Parties accepted the proposal on March 16, 2020. *Id.*  On May 21, 2020, the Parties executed a Memorandum of Understanding setting for the essential terms of the Settlement Agreement.  The Settlement Agreement was fully executed on June 30, 2020. Settlement Agreement, Exh. 1. The mediation was conducted at arm's length and was adversarial. Matern Decl. ¶18. The postures of the Actions, including Sunrise's pending motion to dismiss and Ms. Schlieser's motion for class certification demonstrates that the Parties were prepared to litigate their positions vigorously through trial and appeal if settlement could not be reached. *Id.* Plaintiffs and Class Counsel support the proposed Settlement as being in the best interests of the class. Matern Decl. ¶24; Lapuyade Decl. ¶18.

The amount of the Settlement reached is the result of an informed and detailed analysis of Sunrise's potential liability of total exposure in relation to the costs and risks associated with continued litigation. Matern Decl. ¶¶21-24. Based on Plaintiffs' investigation, discovery, and expert analysis, they were able to effectively negotiate the Settlement. *Id.* (*See* Section C(1) for more detailed analysis on damages and likely outcome.)

## IV.    KEY SETTLEMENT TERMS

### A.    Definition of Settlement Class.

The Agreement proposes certification of a Settlement Class defined as "[a]ll persons who were employed in non-exempt positions at Sunrise's California communities at any time during the period from July 1, 2016 to June 15, 2020 (the "Class Period")." Agreement ¶¶ 6, 27. The Class is comprised of approximately 12,000 individuals. Agreement ¶50; Matern Decl. ¶8.

### B.    Allocation of the Settlement.

The Settlement Agreement provides for a non-reversionary settlement amount of $2,450,000.00 (the "Class Settlement Amount"), which is inclusive of Class Representative Enhancement Payments, the Class Counsel Award, the PAGA Settlement Amount, the Settlement Administration Costs and the Net Settlement Amount, from which the Individual Settlement Payments will be made to all Participating Settlement Class Members. Agreement ¶8.

#### 1.    Administration Costs.

Simpluris was selected as the Settlement Administrator. Agreement ¶26. The administrative costs are estimated to be no more than $55,000.00 and will be paid from the Class Settlement Amount. Agreement ¶25.

#### 2.    Class Counsel's Attorneys' Fees and Costs.

Class Counsel, which is comprised of the four firms representing Plaintiffs in the Actions, shall receive attorneys' fees not to exceed one-third (33-1/3) percent of the Class Settlement Amount, i.e., $816,666.00, plus reasonable litigation costs and expenses of no more than $22,722.86. Agreement ¶¶2, 33. The Settlement is not contingent on the Court granting the attorneys' fees and costs requested. Agreement ¶65(c).

#### 3.    Plaintiffs' Enhancement Payments.

The Agreement proposes an Enhancement Payment of $7,500.00 to each Plaintiff in recognition of their time, effort and the risks they undertook in bringing their Actions

and in giving Sunrise a broader release than other Class Members. Agreement ¶¶7, 34; Matern Decl. ¶¶44-47.

### 4. PAGA Payment.

The Agreement allocates $40,000.00 for PAGA penalties, 75% of which ($30,000.00) shall be paid to the California Labor and Workforce Development Agency ("the LWDA Payment"), and 25% of which ($10,000.00) shall be included in the Net Settlement Amount. Agreement ¶36.

### 5. Allocation of Net Settlement Amount.

After deducting the Class Representative Enhancement Payments, the Class Counsel Award, the LWDA Payment, and the Settlement Administration Costs, the balance of the Class Settlement Amount (the "Net Settlement Amount") will be distributed to Participating Settlement Class Members as Individual Settlement Payments and calculated as follows:

Sunrise will calculate individual amounts of under-payment of wages to Participating Settlement Class Members who held the positions of Director of Sales and Assistant Director of Sales during the Class Period in connection with the programming error that resulted in those individuals' commissions being temporarily inadvertently excluded from their regular rate of pay, estimated to be a combined $301,103. Each of these individuals will receive the full calculated amount of wages.

The Settlement Administrator will apportion the remainder of the Net Settlement Amount between Participating Settlement Class Members (including those who held the positions of Director of Sales and Assistant Director of Sales) based upon each individual's total number of points awarded, as follows:[3]

    a. Individuals who are currently employed by Sunrise as non-exempt will receive 2 points per shift worked during the Class Period. (4,356 people as of June 15, 2020.)

---

[3] The data was provided by Sunrise. Matern Decl. ¶21.

8

b. Individuals who are former non-exempt employees of Sunrise will receive 3 points per shift worked during the Class Period. (7,386 people between July 1, 2016 and June 15, 2020.)

c. Individuals (excluding Directors of Sales and Assistant Directors of Sales who received payments under ¶ 38(a)) who worked overtime hours during a pay period in which they also received any bonus will receive 5 points for each such instance. (4,359 people between July 1, 2016 and June 15, 2020.)

d. All Participating Settlement Class Members will receive 10 points for each wage statement they received during the Class Period.  (Approximately 12,000 people.)

e. Individuals who are classified as part-time according to Sunrise's records will have their point totals reduced by ½ to account for their part-time status for the time period where they were classified as part-time. (7,222 people between July 1, 2016 and June 15, 2020.)

f. The value of each individual point will be determined by dividing the Net Settlement Amount by the total number of points awarded, resulting in the individual "Point Value."   Each Participating Class Member's Individual Settlement Payment will be calculated by multiplying that Participating Class Member's total number of points by the Point Value. Agreement ¶38(b).

The portions of Individual Settlement Payments for under-payment of wages to Directors of Sales and Assistant Directors of Sales will be allocated 100% as wages. Agreement ¶59. All other Individual Settlement Payments will be allocated as follows: 25% to settlement of wage claims and 75% to settlement of claims for interest and statutory penalties. *Id.*

**6.      Payroll Taxes.**

Sunrise will pay the employer's share of payroll taxes additionally and separately from the Class Settlement Amount. Agreement ¶31.

**7.      Unapproved Funds.**

In the event of any timely submitted Settlement Class Member opt-outs or reduction in the Class Representative Enhancement Payments, Class Counsel Award, or Settlement Administration Costs, the Settlement Administrator shall proportionately increase the Individual Settlement Payments for each Participating Settlement Class Member so that the amount actually distributed to Participating Settlement Class Members

9

equals 100% of the corresponding Net Settlement Amount. Agreement ¶32. There is no mechanism in the Settlement Agreement for reversion of any funds to Sunrise.

### 8. Uncashed Checks.

Those funds represented by settlement checks returned as undeliverable and those settlement checks remaining un-cashed for more than one hundred twenty (120) calendar days after issuance will be tendered to the State Bar of California Justice Gap Fund. Agreement ¶57.

### C. Notice of the Proposed Settlement.

Within twenty (20) days following preliminary approval of the Settlement Agreement, Sunrise will provide the Settlement Administrator with the Class List containing the full name, last known mailing address and telephone number; social security number; dates of employment; number of shifts worked during the Class Period; the number of instances in which the Class Member was paid incentive compensation and worked overtime during the same pay period; total number of wage statements issued to that Class Member; and any other information needed to calculate individual settlement payments. Agreement ¶5.

Within ten (10) days of receiving the Class List, the Settlement Administrator will update the addresses through the National Change of Address Database and mail the Class Notice via first-class regular U.S. mail. Agreement ¶¶42, 43. Any notices returned as undeliverable on or before the Response Deadline (30 days after initial mailing of notice) will be sent to the forwarding address provided and if none, the Settlement Administrator will perform a skip-trace or other search and re-mail the notice. Agreement ¶43.

### D. Objections and Exclusion Requests.

A Class Member wishing to object to the Settlement must file a Notice of Objection with the Court within thirty (30) days after the class notice is initially mailed to all Settlement Class Members. Agreement ¶¶24, 54. A Request for Exclusion must be in writing and to the Settlement Administrator within the same time period. Agreement ¶¶24, 48.

### E.     Releases.

Upon the Effective Date (as defined in the Settlement Agreement), the Settlement Class Members, other than those who submit timely requests for exclusion, will release and discharge Sunrise and the other Released Parties from all Released Claims, as defined in the Settlement Agreement. Agreement ¶¶21, 22, 51-53, 69, 70.

In addition to the above release, Plaintiffs will provide a general release for all unknown claims and waive all rights and benefits under California Civil Code section 1542. Agreement ¶53.

### F.     Posting of Settlement Agreement on Settlement Administrator's Website.

Within ten (10) days of entry of the Preliminary Approval Order, the Settlement Administrator will post the Agreement and any other Court-approved forms to its website. Agreement, ¶45.

## V.     ARGUMENT

### A.     The Court Should Conditionally Certify the Proposed Settlement Class.

The Parties seek conditional certification of a Settlement Class defined as:  All persons who were employed in non-exempt positions at Sunrise's California communities at any time during the period from July 1, 2016 to June 15, 2020.  A party seeking to certify a class for settlement purposes must demonstrate that it has met all four requirements under Federal Rule of Civil Procedure 23(a), and at least one of the requirements of Rule 23(b)—in this case, Rule 23(b)(3).  *See Zinser v. Accufix Research Inst*., 253 F.3d 1180, 1186 (9th Cir. 2001).  Fed. R. Civ. P. 23 gives the Court "broad discretion to determine whether a class should be certified…" *Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001).

When considering a request for certification of a settlement class, the Court must first determine "whether the proposed settlement class satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure applicable to all class actions, namely: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *Hanlon*

1    *v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  "[T]he parties seeking class

2    certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1),

3    (2) or (3)."  *Id.* at 1022.

4         Plaintiffs seek provisional certification of a Settlement Class.  Sunrise does not

5    oppose this certification for settlement purposes, while reserving all arguments about the

6    appropriateness of a class for any other purpose. Agreement ¶66. The Settlement Class

7    meets all the applicable standards for provisional certification for settlement purposes:

8                    **1.      Rule 23(a)(1): Numerosity.**

9         The Settlement Class consists of approximately 12,000 individuals.  Agreement

10   ¶25; Matern Decl. ¶8. This number plainly satisfies the numerosity standard, which

11   requires merely that the class be "so numerous that joinder of all members is

12   impracticable." Fed. R. Civ. P. 23(a)(1).  Further, because all Settlement Class Members

13   are either current or former employees of Sunrise, the Settlement Class is readily

14   ascertainable from its regular business records.  Class treatment is therefore the most

15   advantageous method of administering the claims of the Settlement Class Members.

16                   **2.      Rule 23(a)(2): Commonality.**

17        There are sufficient common questions of law and fact satisfying the requirements

18   of Rule 23(a)(2) for purposes of certification of the Settlement Class. The claims being

19   settled turn on, *inter alia*, Plaintiffs' allegations that Sunrise had an unlawful and uniform

20   policy and practice of failing to include non-discretionary bonuses in employees' regular

21   rate of pay and failed to pay employees overtime wages at the proper regular rate of pay

22   (calculated by using the total number of non-overtime hours worked during the pay

23   period). Dkt. 53. Many of the claims alleged by the Settlement Class are based on

24   Sunrise's uniform company-wide policies and practices relating to timekeeping and

25   payroll records.  *Id.* Sunrise's defenses to these claims also raise common issues. For

26   example, Sunrise contends that certain bonuses are discretionary and thus not required to

27   be included in the calculation of employees' regular rate of pay, which presents certain

28   common issues as to particular incentive pay plans.  *Id.*

### 3.      Rule 23(a)(3): Typicality.

The typicality standard is satisfied when "the representative's claims are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010). The California statutes relating to each of the Plaintiffs' claims apply with equal force and effect to all Settlement Class Members, and Plaintiffs' wage and hour claims are typical of the proposed Settlement Class, for settlement purposes only, because they arise from the same factual basis alleged in the complaints and are based on the same legal theories that are applicable to the other Settlement Class Members. Dkt. 53-11, ¶2. Both Mr. Van Cleave and Ms. Schlieser were subject to the same Sunrise payroll calculation methods as all other members of the Settlement Class and allege that they were not paid overtime at the regular rate of pay required by law as a result of Sunrise's payroll calculations. Dkt. 53-11, ¶3.

### 4.      Rule 23(a)(4): Adequacy of Representation.

The adequacy of representation requirement is met where the Class Representative: (1) has common, not antagonistic, interests with unnamed Settlement Class Members; and (2) will vigorously prosecute the interests of the class through qualified counsel. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997). Here, both Mr. Van Cleave and Ms. Schlieser have represented their former co-workers with a focus and zeal true to the fiduciary obligation that they have undertaken, including, *inter alia*, working closely with Plaintiffs' Counsel in providing valuable information and documents regarding their claims, assisting with the investigation of their claims and with discovery, submitting to deposition (Ms. Schlieser only), responding to their counsel's inquiries and generally making themselves available during the litigation, preparing for and attending the mandatory settlement conference in this Court in August 2019 (both), preparing for and attending the Southern District Early Neutral Evaluation Conference (Mr. Van Cleave only), and being available during the Parties' private mediation. Dkt. 53, p. 22; Schlieser Decl. ¶¶4-12, Van Cleave Decl. ¶¶5-12.

So, too, do Plaintiffs' Counsel satisfy the Rule 23(a)(4) adequacy-of-counsel requirement. Matern Decl. ¶¶25-31; Lapuyade Decl. ¶¶23-27, Zakay Decl. ¶¶5-7, Thompson Decl. ¶¶2-7. All four firms representing the Plaintiffs are well-qualified to represent the Settlement Class, as those firms specializes in wage and hour litigation and have served as class counsel in numerous such cases. *Id.*

## B.    The Predominance and Superiority Requirements of Rule 23(b)(3) are Satisfied.

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," and focuses on the "relationship between the common and individual issues." *Hanlon*, 150 F.3d at 1022 (quotation marks and citation omitted).

Here, the Parties agreed to settle all of Plaintiffs' claims globally.  The settled claims were based on uniform theories of liability as to the Settlement Class as a whole. For example, Plaintiffs' regular rate theories turn on predominant common questions of law and fact, such as whether Sunrise had a class-wide policy or practice of (1) not paying employees overtime wages at the proper regular rate of pay, and/or (2) calculating the overtime rate using the total number of hours worked instead of the legal maximum number of regular hours worked. Dkt. 53, pp. 15-21. The Parties agreed that these claims, as well as the others, could and should be settled on a class-wide basis in order to avoid the risk and expense of further litigation.

In sum, class treatment for administration of this Settlement is plainly superior to dozens and possibly thousands of individual actions and/or settlements. *Ambriz v. Coca-Cola Co.*, No. CV 14-00715 SVW, 2015 WL 12683823 at *4 (C.D. Cal. March 11, 2015) (class resolution of plaintiff's claims would be "more efficient and fairer than individual lawsuits."). Because each of the claims' individual values are relatively modest and the filing fees and other litigation costs would inevitably exceed any potential recovery, it would be economically infeasible for most of the Settlement Class Members to attempt to litigate and/or settle their claims separately. Matern Decl. ¶46. Trying potentially

14

thousands of cases individually would require substantial repetition of evidence and could result in conflicting judgments while imposing an extraordinary burden on the Parties' and the Court's resources. *Id.*

### C.    The Proposed Class Action Settlement Should Receive Preliminary Approval.

#### 1.    Courts Review Class Action Settlements to Ensure That the Terms are Fair, Adequate, and Reasonable

Class action settlements must be approved by the court, and notice of the settlement must be provided to the class before the action can be dismissed. Fed. R. Civ. P. 23(e)(1)(A). To protect absent class members' due process rights, approval of class action settlements involves three steps:

1. Preliminary approval of the proposed settlement;
2. Notice to the class providing them an opportunity to exclude themselves; and
3. A final fairness hearing concerning the fairness, adequacy, and reasonableness of the settlement.

*See* Fed. R. Civ. P. 23(e)(2); Manual for Complex Litigation § 21.632 (4th ed. 2004).

At the preliminary approval stage, the Court evaluates whether the settlement is within the "range of reasonableness," and whether notice to the class and the scheduling of a final approval hearing should be ordered. *See, generally*, 3 Conte & Newberg, Newberg on Class Actions, section 7.20 (4th ed. 2002) § 11.25. "Whether a settlement is fundamentally fair within the meaning of Rule 23(e) is different from the question whether the settlement is perfect in the estimation of the reviewing court." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012). Thus, the Court must determine whether a settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1).

To make this determination at preliminary approval, the Court may consider some or all of the following factors: the extent of discovery completed, and the stage of proceedings; the strength of the Plaintiffs' case and the risk, expense, complexity and likely duration of further litigation; the risk of maintaining class action status throughout

---

15

trial; the amount offered in settlement; and the experience and views of counsel.  *See Stanton v. Boeing Co.* 327 F. 3d 938, 959 (9th Cir. 2003) (*citing Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003)).  "Under certain circumstances, one factor alone may prove determinative in finding sufficient grounds for court approval."  *Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525-526 (C.D. Cal. 2004) (*citing Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993)).

At the preliminary approval stage, the Court need only review the parties' proposed settlement to determine whether it is within the permissible "range of possible judicial approval" and thus, whether the notice to the class and the scheduling of the formal fairness hearing is appropriate.  Newberg, § 11:25; *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079-80 (N.D. Cal. 2007); *see also* Alba Conte & Herbert B. Newberg, 4 *Newberg on Class Actions*, § 13.13 (5th ed., 2014).  As long as "preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval," the Court should preliminarily approve the Settlement.  *In re Vitamins Antitrust Litig.*, 2001 WL 856292, at *4 (D.D.C. July 25, 2001) (quoting *Manual for Complex Litigation, Third* § 30.41 at p. 237 (Federal Judicial Center 1995)).  A full fairness analysis follows at the final approval stage, after Class Members have an opportunity to be heard regarding the Settlement. *Ambriz*, 2015 WL 12683823 at *5, n. 3.

## 2. The Settlement is the Product of Arms-Length, Non-Collusive Negotiations, has no Obvious Deficiencies, and Complies with the 2018 Amendments to Preliminary Approval Requirements and Standards.

As of December 1, 2018, Federal Rule of Civil Procedure 23 was amended, and preliminary approval is now required before ordering notice of a proposed settlement. Rule 23(e)(1) now requires the parties to demonstrate that the court will be able to

16

approve the proposed settlement and certify the class, if not already certified, pursuant to the criteria listed in (e)(2).  As explained below, the Settlement Agreement is fully compliant with the requirements of Rule 23(e).

The Plaintiffs and Class Counsel have adequately represented the class, as evidenced by the extensive efforts in litigation and mediation.  Likewise, the mediation, subsequent negotiations, and mediator's proposal effectuated by Ms. Klerman confirms the proposed settlement was negotiated at arms' length, with neither party dictating its views on resolution terms or amounts.  The expert report obtained by Plaintiffs' counsel is up to today's standards and the extrapolation model provided assurances that counsel were negotiating towards the top end of damages available if the case was tried to a jury. Sunrise advances several significant defenses, and past litigation history indicated that expected delays with continued litigation would be lengthy, and that there was a substantial risk to Plaintiffs that no classes would be certified. The method of distribution of settlement funds is appropriate because as an employment wage case, the damages are directly tied to the number of hours and shifts worked and pay statements issued.  Those all form the basis for the settlement and the distribution of benefits.  Class Counsel's fee request is in line with market rates, and a 1/3 percentage of the common fund is reasonable considering the amount of work and risk taken by the four law firms. Lastly, there are no side agreements under Rule 23(e)(3) involved in this case beyond the actual settlement agreement presented to the Court.

### a.    The Settlement is non-collusive.

The Settlement Agreement is clearly non-collusive, as it was reached following two unsuccessful formal settlement conferences with Magistrates from this Court and the Southern District of California, a full-day mediation session, subsequent settlement discussions, and the acceptance of a mediator's proposal, and it is non-reversionary. (Matern Decl. ¶18; Agreement ¶¶14, 32, 37.)

///

///

b.   **The Settlement contains no "obvious deficiencies."**

The Settlement contains none of the provisions that courts sometimes identify as raising cause for concern, as discussed below.

(i)   **The Settlement provides substantial monetary relief to the Class.**

The Settlement provides substantial monetary relief for Class Members in the amount of $2,450,000.00 with recovery to the Settlement Class of $1,510,612.  Matern Decl. ¶24.

(ii)   **The distribution plan treats all Class Members equally and is fair and reasonable.**

The Settlement provides for all Participating Settlement Class Members to receive Individual Settlement Payments based on fair criteria and a fair distribution formula largely based upon their tenure at Sunrise, including number of shifts worked and number of wage statements they received, as well as the number of instances in which they received particular types of overtime pay. Agreement ¶38(b). Each Settlement Class Member who can be located will be mailed a payment. Agreement ¶¶42-44. To protect all Settlement Class Members' interests, the Settlement incorporates procedures to ensure that as many Class Members as possible can be located. *Id.*

(iii)   **The release is coextensive with the operative complaints.**

The release given by Class Members under the terms of the Settlement Agreement is fair and reasonable because it is limited to those allegations that were or could have been alleged in the operative complaints in the Actions for harms arising during the Class Period. Agreement ¶51.

(iv)   **The proposed Class Representative enhancement payments are fair and reasonable.**

Although Plaintiffs are eligible to receive Enhancement Payments in addition to their Individual Settlement Payments, the Settlement is not contingent on Court approval of the Enhancement Payments because any amount that is not approved by the Court will

18

1  be added to the Net Settlement Amount for distribution to the other Participating

2  Settlement Class Members. Agreement ¶ ¶32, 65(c). Because Plaintiffs actively

3  participated in the Actions, contributing their time and effort, placed themselves at risk

4  in using their name to prosecute this lawsuit, put the interests of the Class ahead of their

5  own interests, and are giving Sunrise a broader release than the other Participating

6  Settlement Class Members, the requested Enhancement Payments of $7,500.00 each are

7  fair and reasonable. Matern Decl. ¶44.

8                    **(v)      The Settlement's provisions for attorneys' fees and costs**

9                              **are in the range that is routinely approved.**

10         The attorneys' fees and costs provisions of the settlement are similarly fair and

11  reasonable. The settlement permits Class Counsel to seek attorneys' fees of up to one-

12  third of the Class Settlement Amount. Agreement ¶2, 33. Plaintiffs' counsel's current

13  lodestar is $605,767.25, which does not include time preparing for and attending the

14  approval hearings, preparing the final approval motion papers, working with the

15  Settlement Administrator and handling post-approval inquiries from Participating

16  Settlement Class Members. Matern Decl. ¶¶37.

17         The requested one-third fee is also consistent with fee awards provided under the

18  common fund doctrine in the Ninth Circuit. A recent District Court decision in a wage

19  and hour class action like this one noted that, "[w]ith respect to the percentage method,

20  case law surveys suggest that 50% is the upper limit, with 30-50% commonly being

21  awarded in cases in which the common fund is relatively small." (*Espinosa v. California*

22  *College of San Diego, Inc*., No. 17 CV 744-MMA (BLM), 2018 WL 1705955, at *9-10

23  (S.D. Cal. April 9, 2018), citing Rubenstein, Conte and Newberg, *Newberg on Class*

24  *Actions* at § 15:83.) The court further noted that, "California cases in which the common

25  fund is small tend to award attorneys' fees above the 25% benchmark." (*Espinoza*, *supra*,

26  2018 WL 1705955 at *9 citing *Craft v. Cnty. of San Bernardino,* 624 F.Supp.2d 1113,

27  1127 (C.D. Cal. 2008) 624 F.Supp.2d 1113, 1127 (holding attorneys' fees for large fund

28

1   cases are typically under 25% and cases below $10 million are often more than the 25%

2   benchmark).

3         Plaintiffs' counsel have proceeded in this matter with payment deferred to the end

4   of the case, and then, of course, contingent on the outcome. Matern Decl. ¶38.  Counsel's

5   efforts have resulted in substantial benefits to the Participating Settlement Class Members

6   in the form of a significant settlement fund established to compensate them for Sunrise's

7   allegedly unlawful conduct.

8         Class Counsel will seek reimbursement of their litigation expenses, not to exceed

9   $22,722.86.  Agreement ¶2, 33;  Matern Decl. ¶43 ($10,644.73);  Lapuyade Decl. ¶5

10  ($3,317.94);  Zakay Decl. ¶17 ($2,915.76);  Thompson Decl. ¶40 and Exh. 4 thereto

11  ($5,844.43).

12              **c.      The Settlement Is Well Within the Range of Possible Approval.**

13        At the preliminary approval stage, courts often tentatively assess the factors

14  that will go into a final fairness determination: (1) the strength of the plaintiff's case; (2)

15  the risk, expense, complexity, and likely duration of further litigation; (3) the amount of

16  the settlement; (4) the extent of discovery completed and the stage of the proceedings;

17  and (5) the experience and views of counsel. *See, e.g.*, *Ambriz*, 2015 WL 12683823 at

18  *5; *Moshogiannis v. Security Consultants Grp., Inc.*, No. 10-05971, 2012 WL 423860 at

19  *5 (N.D. Cal. Feb. 8, 2012); *Gardner v. GC Servs., LP*, No. 10-0997, 2011 WL 5244378

20  at *6 (S.D. Cal. Nov. 1, 2011). All of these factors indicate that the Settlement is well

21  within the range of reasonableness, and the Court should direct notice to be issued to

22  Class Members.

23              **1.      The Strength of Plaintiff's Case on the Merits Balanced**

24                      **Against the Risk, Expense, and Likely Duration of**

25                      **Further Litigation Weigh in Favor of the Settlement.**

26        The anticipated class recovery under the Settlement is $1,510,612. Matern Decl.

27  ¶24. The following factors bear on the amount of the compromise. Although Plaintiffs

28  strongly believe in the merits of their claims, a legitimate controversy exists over them.

Matern Decl. ¶22. For example, Plaintiffs contend that both liability and certification can be obtained for the meal and rest period classes. However, Sunrise pointed to this Court's prior rulings denying certification of regular rate, rounding and meal and rest periods claims in the *Shiferaw* action (where certain meal period classes based on rounding were certified). *Shiferaw* Dkt. 147. Sunrise also pointed to the granting of partial summary judgment in favor of Sunrise on the *Shiferaw* plaintiffs' class claim alleging that Sunrise failed to include certain incentive compensation called "Spot Bonuses" in calculating the regular rate. *Shiferaw* Dkt. 210. Spot Bonuses are one of the items of compensation upon which Plaintiffs' regular rate claims are based in this case. Matern Decl. ¶ 22.  These examples demonstrate that both liability and certification are not given.

Plaintiffs also recognize the substantial risks involved in litigating the Actions, including that the courts may deny class certification; the expensive, time-consuming, and extremely uncertain proposition of proving the amount of wages due to each Class Member; the prospect that the courts would, in their discretion, reduce PAGA penalties; the likelihood that any verdict will inevitably lead to one or more appeals; and that further litigation will cause inconvenience, distraction, disruption, delay, expenditures and recovery disproportionate to the potential benefits of continued litigation. Matern Decl. ¶ 23-24. In contrast, because of the proposed settlement, Class Members will receive timely and certain relief and avoid the risk of an unfavorable judgment and a questionable appellate outcome. *Id.* Such a result is "preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citation omitted).

These factors were considered in reaching settlement. The total best case scenario was estimated to be valued in the upper eight figures, including recovery of all possible wages, civil penalties, and interest. Based on calculations performed by Plaintiffs' expert using Sunrise's records, unpaid meal period premiums were estimated at about ten percent of the estimated value.  The claim for unpaid overtime for all non-exempt employees based on the alleged failure to include all incentive compensation in regular rate totaled

21

less than one percent of the claim. Plaintiffs also valued their derivative claims, finding the potential waiting time penalties to be about twenty five percent of the total value of the claim for over 6,000 terminated employees, wage statement penalties (for over 5,000 employees during the relevant period) totaling an estimated five percent of the total value. Potential maximum PAGA penalties for the over 5,000 employees with over 40,000 workweeks from January 17, 2018 through February 24, 2020 came to about ten percent of the total value, with the maximum PAGA penalty for Labor Code 226.3 violations amounting to nearly half of the total maximum possible value of the claims.  Matern Decl. ¶ 21.

In sum, when the risks of litigation, the uncertainties involved in achieving class certification, the burdens of proof necessary to establish liability, and the probability of appeal of a favorable judgment are balanced against the merits of Plaintiffs' claims, it is clear that the Class Settlement Amount is fair, adequate and reasonable.  Matern Decl. ¶24. Thus, the overall benefits of the proposed Settlement outweigh the potential risks, expense and likely duration of further litigation.  *Id.*  For these reasons, Plaintiffs and Class Counsel support the proposed Settlement as being in the best interests of the Class.  *Id.*

### 2.      The Overall Recovery Is Substantial.

The $2,450,000.00 Class Settlement Amount is substantial, e.g., for comparison, the *Shiferaw* case settled similar claims of approximately 16,300 Sunrise employees for $2,180,000.

### 3.      The Stage of the Proceedings.

The stage of the litigation further supports the Settlement. Plaintiffs investigated and researched their claims, conducted formal and informal discovery, received substantial payroll and timekeeping data and other employment records, retained an expert who analyzed the pertinent data, moved for certification as to some claims, attended settlement conferences and mediation, engaged in additional settlement discussions

1   overseen by a neutrals, and are thus aware of the possible outcomes. Matern Decl. ¶¶8-
2   24.  This factor weighs in favor of Settlement.

3              **4.     Highly Experienced Class Counsel Support the**
4                       **Settlement.**

5              Class Counsel is highly experienced in class litigation and includes the counsel
6   who represented plaintiff employees in the related *Shiferaw* matter. Matern Decl. ¶¶25-
7   31; Lapuyade Decl. ¶¶23-28, Zakay Decl. ¶¶5-7, Thompson Decl. ¶¶2-7. Class Counsel's
8   endorsement of the Settlement as fair, reasonable, and adequate in light of the risks of
9   further litigation and recommendation that it be approved "is entitled to significant weight,
10  and weighs in favor of settlement." *See, e.g.*, *Ambriz*, 2015 WL 12683823 at *6; *Morales
11  v. Stevco, Inc.*, 2011 WL 5511767 at *11 (E.D. Cal. Nov. 10, 2011).

12  **VI.   THE PAGA PENALTIES SECURED BY THE SETTLEMENT ARE**
13         **GENUINE AND MEANINGFUL AND FULFILL PAGA'S**
14         **UNDERLYING PURPOSE TO BENEFIT THE PUBLIC**

15             The PAGA statute provides that "[t]he superior court shall review and approve any
16  settlement of any civil action filed pursuant to this part." Cal. Lab. Code, § 2699(l)(2).
17  The statute, however, does not require a two-step process or otherwise mimic the class
18  action approval requirements when the parties reach a settlement only as to PAGA civil
19  penalties.  *Salazar v. Sysco Central Cal., Inc.*, 2017 WL 1135801 (E.D. Cal. Feb. 2, 2017)
20  at *2 (rejecting the application of class action settlement rules and procedures for PAGA
21  settlement approval). Under the general provisions of PAGA's scheme, 75% of the civil
22  penalties recovered go to the State, while the remaining amount is given to the aggrieved
23  employees.  Cal. Lab. Code, § 2699(i).

24             Here, the Settlement allocates $40,000.00 to the State and allegedly aggrieved
25  employees that is genuine and meaningful, consistent with the underlying purpose of the
26  statute to benefit the public and thus fulfills the underlying purpose of the statute. This
27  represents 1.6% of the Class Settlement Amount (compared to *Shiferaw's* 1%) and is
28  well within the range of amounts approved by courts in California. See *Andres v.*

*Laboratory Corporation of America*, No. 2:13-cv-08773-GW-VBK (C.D. Cal. Nov. 3, 2015) (gross settlement fund of $520,000, of which $5,000 (or 1%) was allocated to the settlement of PAGA penalties); *Hightower v. JPMorgan Chase Bank, N.A.*, No. 2:11-cv-01802-PSG-PLA (C.D. Cal. Oct. 5, 2015; Judge Philip S. Gutierrez) (gross settlement fund of $12 million, of which $25,000 (or 0.2%) was allocated to the settlement of PAGA penalties).

Plaintiffs' settlement of PAGA civil penalties thus achieves PAGA's objectives by imposing civil penalties that are sufficient "to punish and deter" Defendants from future Labor Code violations, but without being "unjust, arbitrary and oppressive, or confiscatory."

## VII. THE PROPOSED NOTICE SHOULD BE APPROVED

Federal Rule of Civil Procedure 23(c)(2)(B) requires that absent Settlement Class Members receive the "best notice that is practicable under the circumstances." The proposed Notice of Settlement meets all of the notice requirements of Rule 23(b)(3). The Notice Packet explains in easily understood language what the case is about; the class definition and claims; the Class Settlement Amount and approximate Individual Payment Amount each Participating Settlement Class Member will receive; the requested amounts to be paid to Class Counsel and Enhancement Payments to the proposed Class Representatives; the right of Settlement Class Members to attend the final approval hearing, to opt-out or object to the Settlement and the process by which they can do so; the binding effect of the Settlement on those who do not request exclusion; a description of the Claims being released; and the details of the final fairness hearing. Agreement, Ex. A. Settlement Class Members will have 30 days to request exclusion from or object to the Settlement. Agreement ¶¶24, 48, 54.

The Parties' proposed plan for directing notice to the Class is also "the best notice that is practicable under the circumstances." Using last-known addresses, the Settlement Administrator will send the notice by first class U.S. Mail to all Class Members. Agreement ¶42. Further, the Settlement Administrator will perform skip traces or other

means to obtain the correct address of any Settlement Class Members for whom the notice is returned as undeliverable, and shall attempt re-mailings where new addresses are obtained. Agreement ¶43. For these reasons, the Settlement's plan for directing notice to Class Members satisfies Rule 23(c)(2)(B).  *See, e.g.*, *Wright v. Linkus Enter., Inc.*, 259 F.R.D. 468, 475 (E.D. Cal. 2009); *Misra v. Decision One Mortg. Co.*, No. 07-0994 DOC, 2009 WL 4581276, *9 (C.D. Cal. Apr. 13, 2009).

## VIII.   SCHEDULE FOR FINAL APPROVAL

Because the case meets the requirements for certification of a settlement class and the Settlement meets the requirements for preliminary approval, the Court should direct notice to issue and set a final fairness hearing to decide whether to grant final approval to the Settlement, as well as whether to grant the proposed Class Representatives' application for Enhancement Payments and Class Counsel's motion for attorney's fees and costs.  See Fed. R. Civ. P. 23(e)(2).

## IX.   CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court grant preliminary approval of the Settlement, approve the proposed Notice of Settlement, and set a final approval hearing.

Dated: July 16, 2020                          MATERN LAW GROUP, PC


                                       By:     /s/ Matthew J. Matern_____
                                               Matthew J. Matern
                                               Scott A. Brooks
                                               Attorneys for plaintiff Nancy Schlieser,


Date:  July 16, 2020

                                               SOMMERS SCHWARTZ, P.C.
                                               ZAKAY LAW GROUP, APLC
                                               THE JCL LAW FIRM, APC


                                       By:     /s/ Shani O. Zakay_____
                                               Shani O. Zakay
                                               Attorneys for plaintiff Christian Van Cleave