1  MATTHEW J. MATERN, SBN 159798
   mmatern@maternlawgroup.com
2  SCOTT A. BROOKS, SBN 160115
   sbrooks@maternlawgroup.com
3  MATERN LAW GROUP, PC
   1230 Rosecrans Avenue, Suite 200
4  Manhattan Beach, CA 90266
   Telephone: 310.531.1900
5  Facsimile: 310.531.1901

6  Attorneys for Plaintiff Nancy Schlieser

7

8               UNITED STATES DISTRICT COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10 | NANCY SCHLIESER, an individual, | CASE NO. 8:19-cv-00443 JAK (PLAx)
   | on behalf of herself and on behalf of all |
11 | persons similarly situated, | **DECLARATION OF NANCY SCHLIESER IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**
12 |         Plaintiff, |
13 |   v. |
14 | SUNRISE SENIOR LIVING MANAGEMENT, INC., a Virginia Corporation; and DOES 1-50, Inclusive, | DATE: TBD
15 | | TIME: 8:30 A.M.
   | | CTRM: 10B
16 |         Defendants. |
17 | | Complaint Filed: January 17, 2019
   | | Date Of Removal: March 7, 2019
18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF NANCY SCHLIESER IN SUPPORT OF PAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL 8:19-cv-00443 JAK (PLAx)

## DECLARATION OF NANCY SCHLIESER

I, Nancy Schlieser, hereby declare as follows:

1. I am over eighteen years old and unless the context indicates otherwise, I have personal knowledge of the following facts and if called as a witness, I could and would testify competently to them. I am the named Plaintiff in *Nancy Schlieser v. Sunrise Senior Living Management, Inc., et al.* I make this declaration in support of the Motion for Preliminary Approval of Class Action Settlement and for certification of a settlement class.

2. I was employed by Sunrise Senior Living Management, Inc. from about May 10, 2005 to about February 1, 2018 at the Sunrise location in Seal Beach, California. Sunrise operates facilities, often called communities, which provide residential and assisted living for senior citizens. During the time that I worked at Sunrise there were approximately 50 locations in the State of California. I was hired as a Marketing Assistant and after working in various positions such as the Director of Community Relations, I was promoted to be the Director of Sales, which was also called Director of Sales & Marketing ("Director of Sales") at various times, and I held that positon until my employment ended. As Director of Sales, my duties included marketing and sales of rooms in the facility, making sure the model rooms were pristine, meeting with prospective residents and their families and giving tours, and managing the move-in process for new residents. There was at least one Director of Sales at each location, and some locations also had Assistant Director of Sales such as the Huntington Beach and La Palma location.

3. Throughout my employment at Sunrise, I was a non-exempt, hourly employee. As such, I was subject to the same uniform Sunrise policies and procedures as my fellow non-exempt employees that are members of the putative class. As a result of these policies and practices, I was not paid overtime at the properly calculated regular rate of pay required by law. As

1 Director of Sales during the period from July 1, 2016 through the date my
2 employment ended, I consistently worked overtime during each pay period. As
3 the copies of my wage statements attached as Exhibit 4 show, I worked
4 overtime hours almost every pay period during that time. As those same wage
5 statements also show, during that same span of time I was paid thousands of
6 dollars in commissions and bonuses including under the Post-Opening
7 Commission, Race to the Finish, Healthy Living, Occupancy Commission, and
8 Community Fee Commission plans. I was eligible for and participated in each of
9 those programs. For instance, in 2017, I earned at least $13,025 in Post-
10 Opening Commissions, $3,543.50 in Race to the Finish Wage payments, and
11 $1,750 in Community Fee Commissions. However, as the wage statements also
12 show, in 2017, I received but one "FLSA OT Adj" in the amount of $1.81 and
13 that was in the final, full pay period for 2017. Because Sunrise did not pay me
14 for the overtime that I worked at the proper rate of pay, I was owed wages that
15 were not paid to me at the time that I was discharged from my employment,
16 and those wages remain due and owing. In addition, the proper rate of pay and
17 the number of hours worked were not set forth accurately on my wage
18 statements for period where I was paid incentive pay and worked overtime.
19     4. Before this lawsuit was filed, I provided documents to my lawyers
20 regarding my employment at Sunrise including payroll and commission
21 documents. I had multiple conferences with my lawyers about the facts and the
22 claims that I wanted to pursue against Sunrise.[1] I spent a considerable amount

---

[1] In order to preserve my attorney-client privilege, I must refrain from revealing the specifics of my communications with my lawyers. However, I understand that the privilege is not waived by stating generally the matters that I have discussed with my lawyers. I do not intend any waiver of the privilege although I also understand that as the putative representative of the proposed settlement class, my duties include providing information for the Court's consideration both as to the proposed settlement and certification of a settlement class.

1. of time searching for, reviewing, and explaining relevant documents to them. During those conferences, my lawyers gave me an overview of complex class and representative litigation, the litigation process generally, and my role and my obligations as the representative plaintiff.

5. I reviewed a draft of the complaint and my lawyers filed the complaint only after I approved its content. I continued to work with counsel to prosecute the claims alleged, and I remained in regular contact with my lawyers and stayed current on the progress of the lawsuit.

6. As part of the work I did for this case, I prepared for the settlement conference with Magistrate Judge Abrams and attended the settlement conference on August 12, 2019 at the federal courthouse in downtown Los Angeles with my lawyers. I understand that Sunrise turned over records and data to prepare for the settlement conference and I spent time with my lawyers explaining how Sunrise facilities operate, the jobs of the employees, about sales, commissions, bonuses, payroll, and timekeeping based on my time working there.

7. I also worked with my lawyers during the discovery phase of this case. This included providing information for the initial disclosure, helping to prepare for the mandatory settlement conference, and later the formal discovery. The formal discovery included responding to interrogatories and some 45 requests for production. I understand that over 1,300 documents were produced to Sunrise and many of them I provided. I also prepared for and had my deposition taken at Sunrise's lawyers' office in Irvine on January 7, 2020.

8. I also prepared for the mediation with Ms. Klerman on February 24, 2019 at Sunrise's lawyers' office, which lasted all day. I understand that before the mediation, Sunrise turned over more data and documents; I discussed the data and the documents with my lawyers as part of the preparation.

9. I also assisted my lawyers in preparing the motion for class

1 certification, and I provided a declaration in support of the motion.

2     10.    The case did not settle at the mediation with Ms. Klerman but did a short time later. I remained available to help my lawyers during the negotiations for the memorandum of understanding and settlement agreement, and I reviewed the terms of the proposed settlement. My lawyers explained the specifics of how the settlement would work and I accepted the settlement only after I evaluated it to make sure it is fair. Based on my lawyers' evaluation and recommendation, and my own review, I believe the settlement is fair and reasonable and adequately compensates class members.

    11.    Over the course of this litigation I have spent a significant amount of time conferring and working with my lawyers on the prosecution of my claims and evaluating the settlement and related documents. I estimate that I have spent approximately 60-70 hours assisting my lawyers in the prosecution of this lawsuit, including participating in discovery.

    12.    During the course of this litigation, I was aware of the risks I was taking by bringing this lawsuit, initially as the sole named plaintiff and class representative. I knew that future employers might do a background check on me or otherwise find out about my participation in this lawsuit against a previous employer and might retaliate against me as a result. This is a particular concern because as a Director of Sales, part of my job was to be familiar with other facilities and my counterparts there, and we sometimes referred clients to each other. So in this way it can be a fairly small community.

    13.    I seek to be a class representative for the proposed settlement class in this lawsuit. I understand the responsibilities of being a class representative, including that I am seeking to represent all members of the proposed class and their interests.

14. I have no interests that are inconsistent with the interests of the class members I seek to represent, and I will adequately represent those class members.

15. As a class representative, I will always consider the interests of class members just as I would consider my own interests and I understand that I must even put the interests of class members before my own interests. I have actively participated in this case, and intend to continue my active participation for as long as is necessary to advance the interests of the settlement class.

16. I reviewed the settlement agreement for this lawsuit.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 7/9/2020, 2020, at Los Alamitos, California.

_Nancy Schlieser_
Nancy Schlieser