Matthew J. Matern, SBN 159798
  mmatern@maternlawgroup.com
Scott A. Brooks, SBN 160115
  sbrooks@maternlawgroup.com
MATERN LAW GROUP, PC
1230 Rosecrans Avenue, Suite 200
Manhattan Beach, CA  90266
Telephone:   310.531.1900
Facsimile:   310.531.1901
Class Counsel and Attorneys for Plaintiff Nancy Schlieser

Jason J. Thompson, *pro hac vice*
  jthompson@sommerspc.com
Trenton R. Kashima, SBN 277924
  tkashima@sommerspc.com
SOMMERS SCHWARTZ, PC
1 Towne Square, #1700
Southfield, MI 48076
Telephone:  248.355.0300
Facsimile:   248.436.8453
Class Counsel and Attorneys for Plaintiff Christian Van Cleave

[Additional counsel on following page]

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NANCY SCHLIESER, an individual, on behalf of herself and on behalf of all persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SUNRISE SENIOR LIVING MANAGEMENT, INC., a Virginia Corporation; and DOES 1-50, Inclusive,<br><br>Defendants. | Case No. 8:19-cv-00443 JAK (PLAx)<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:   December 6, 2021<br>Time:   8:30 A.M.<br>Courtroom:  10B |

;

CHRISTIAN VAN CLEAVE, an individual, on behalf of himself and on behalf of all persons similarly situated,

Plaintiff,

v.

SUNRISE SENIOR LIVING MANAGEMENT, INC., a Virginia Corporation; and DOES 1-50, Inclusive,

Defendants.

Shani O. Zakay, SBN 277924
  shani@zakaylaw.com
ZAKAY LAW GROUP, APLC
3990 Old Town Ave., Ste. C204
San Diego, CA  92110
Telephone:  619.255.9047
Facsimile:   858.404.9203
Class Counsel and Attorneys for Plaintiff Christian Van Cleave

Jean Claude Lapuyade, SBN 248676
  jlapuyade@jcl-lawfirm.com
THE JCL LAW FIRM, APC
3990 Old Town Ave., Suite C204
San Diego, CA 92110
Telephone:  619.599.8292
Facsimile:   619.599.8291
Class Counsel and Attorneys for Plaintiff Christian Van Cleave

PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT

To all parties and their counsel of record:

Please take notice that on December 6, 2021 at 8:30 a.m., in Courtroom 10B of the United States District Court for the Central District of California located at 350 W. First Street, Los Angeles, California, plaintiffs and class representatives Nancy Schlieser and Christian Van Cleave ("Plaintiffs") will, and hereby do, move the Court for entry of an order:

1.      Granting final approval of the proposed class action settlement set forth in the Joint Stipulation of Class Action Settlement and Release (the "Settlement Agreement" or "Settlement") (Dkt. 74-2);

2.      Find that the Notice of Class Action Settlement ("Class Notice") distributed to Class Members pursuant to the Court's order granting preliminary approval (Dkt. 88) constituted the best notice practicable under the circumstances to all Class Members;

3.      Finally certifying the Class for settlement purposes only;

4.      Directing that compensation to the Participating Settlement Class Members be effected pursuant to the terms of the Agreement;

5.      Approving the payment to the California Labor Workforce Development Agency in the amount of $30,000.00;

6.      Approving the Settlement Administrator's costs in the amount of $55,000.00; and

7.      Entering final judgment in the action.

This motion is made on the grounds that the proposed settlement is fair, adequate, and reasonable, and the Class Notice fairly and adequately informs the Class Members of the terms of the proposed Settlement, their potential awards, their rights and responsibilities, and the consequences of the Settlement.

This motion is based on this notice, the attached memorandum of points and authorities, the Declarations of Matthew J. Matern, Jason J. Thompson, Christian Van Cleave and Nancy Schlieser and all exhibits thereto, including the Settlement

Agreement, all documents and records on file in this matter, and such additional argument, authorities, evidence and other matters as may be presented by the parties hereafter.  This motion is made following the conferences of counsel pursuant to Local Rule 7-3 on October 5, 2021.

Dated: October 7, 2021                    MATERN LAW GROUP, PC

By:    /s/ Matthew J. Matern
Matthew J. Matern
Scott A. Brooks
Class Counsel and Attorneys for plaintiff
Nancy Schlieser

Date: October 7, 2021

SOMMERS SCHWARTZ, P.C.
ZAKAY LAW GROUP, APLC
THE JCL LAW FIRM, APC

By:    /s/ Jason J. Thompson
Jason J. Thompson
Class Counsel and Attorneys for plaintiff
Christian Van Cleave

1

# TABLE OF CONTENTS

2

**Page(s)**

3

4

I      INTRODUCTION………………………………………………………1

5

II.    FACTUAL AND PROCEDURAL BACKGROUND…………………………1

6

    A.    The Parties...........................................................................................2

7

    B.    Procedural History. .............................................................................2

8

III.   SETTLEMENT………………………………………………………………3

9

IV.    PRELIMINARY APPROVAL AND NOTICE TO THE CLASS ......................5

10

11

V.     SUMMARY OF SETTLEMENT………………………………………………6

12

    A.    Definition of Settlement Class. .........................................................6

13

    B.    Settlement Terms...............................................................................6

14

        1.    Individual Settlement Award.  ..............................................6

15

        2.    Class Representative Enhancement Payments.. ...........................8

16

        3.    Class Counsel's Attorneys' Fees and Costs.  . ...............................8

17

        4.    Payment to the LWDA.  . ....................................................8

18

        5.    Settlement Administration Costs.  . ...................................8

19

        6.    Payroll Taxes.. ................................................................8

20

        7.    Uncashed Checks.............................................................9

21

22

    C.    Releases.............................................................................................9

23

IV.    CLASS NOTICE HAS BEEN EFFECTUATED AND COMPORTS WITH RULE 23 AND THE REQUIREMENTS OF DUE PROCESS……………...9

24

25

26

VI.    THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL…………...10

27

    A.    The Strength of Plaintiffs' Case.........................................................11

28

i

B.    The Risk, Expense, Complexity, and Likely Duration of Further Litigation. ................................................................. 12

C.    The Risk of Maintaining Class Action Status throughout the Trial. ....... 13

D.    The Amount Offered in Settlement. ............................................. 14

E.    The Extent of Discovery Completed and the Stage of the Proceedings. ................................................................. 15

F.    The Experience and Views of Class Counsel. ............................. 15

G.    The Presence of a Governmental Participant. ............................ 16

H.    Class Members' Reaction to the Proposed Settlement. ............... 16

I.    Fair and Honest Negotiations. ................................................... 16

VII.  CONCLUSION ................................................................. 17

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Federal Cases</u>

*Aarons v. BMW of N. Am., LLC*,
  2014 WL 4090564 (C.D. Cal. Apr. 29, 2014) ......................................... 10, 16

*Hanlon, v. Chrysler Corp*
  150 F.3d ............................................................................................................ 11

*In re Pacific Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ........................................................................... 15

*In re Portal Software Secs. Litig.*,
  2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) .............................................. 13

*In re Synocor ERISA Litigation*,
  516 F.3d 1095 (9th Cir. 2008) ....................................................................... 11

*Linney v. Cellular Alaska Partnership*,
  151 F.3d 1234 (9th Cir. 1998) ................................................................. 14, 15

*Molski v. Gleich*,
  318 F.3d 937 (9th Cir. 2003) ......................................................................... 16

*Mullane v. Central Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) .......................................................................................... 9

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ........................................................ 14, 15, 16

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) .............................................................. 11, 12, 14

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) .................................................................... 11, 16

*Saulic v. Symantec Corp.*,
  596 F.Supp.2d 1323 (C.D. Cal. 2009) ............................................................. 9

iii

*Staton, v. Boeing Co.*
    327 F .3d ................................................................................................ 10

*Vasquez v. Coast Valley Roofing, Inc.,*
    266 F.R.D. 482 (C.D. Cal. 2010) ............................................................. 11

*Young v. Polo Retail, LLC,*
    2007 WL 951821 (N.D. Cal. Mar. 28, 2007) ..................................... 12, 15

## State Statutes

California Civil Code section 1542 .................................................................. 9

California Labor Code section 2699 ............................................................... 13

## Federal Rules

Federal Rules of Civil Procedure, Rule 23 ....................................................... 9

Federal Rules of Civil Procedure, 23(e)(1)(B) ................................................ 9

Federal Rules of Civil Procedure, Rule 23(c)(2)(B) ........................................ 9

Federal Rules of Civil Procedure, Rule 23(e) ................................................. 10

Federal Rules of Civil Procedure, Rule 23(e)(1) .............................................. 9

Federal Rules of Civil Procedure, Rule 23(e)(l)(c) ........................................ 10

## Other Authorities

*Fulford v. Logitech, Inc.,*
    2010 U.S. Dist. LEXIS 29042, *8 (N.D. Cal. Mar. 5, 2010) ..................... 12

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

**I.   INTRODUCTION**

3

On July 6, 2021, this Court granted preliminary approval of the proposed class

4

action settlement between Nancy Schlieser and Christian Van Cleave ("Plaintiffs") and

5

defendant Sunrise Senior Living Management, Inc. ("Defendant"). Dkt. 88. Plaintiffs

6

now seek entry of an order granting final approval of the Joint Stipulation of Class

7

Action Settlement and Release ("Settlement Agreement" or "Agreement").

8

The Agreement proposed for final approval will dispose of this action in its

9

entirety as to the following class:

10

11

> All persons who were employed in non-exempt positions at Sunrise's
> California communities at any time during the period from July 1,
> 2016 to June 15, 2020 (the "Class Period").

12

13

If finally approved, the Agreement will create an all-inclusive, **non-reversionary**

14

settlement fund in the amount of $2,450,000.00 and there is **no claim form required**.

15

The Court should grant final approval as the Agreement is fair, adequate, and

16

reasonable. The Agreement provides substantial benefits to the Class Members when

17

balanced with the strength of Plaintiffs' case and the risks and expense of further

18

litigation. In addition, the reaction of the Class Members to the proposed Settlement has

19

been overwhelmingly positive, as there are **no objections** and only seven (0.06%) of

20

the 11,566 Class Members requested exclusion. The Agreement does not suffer any

21

obvious deficiencies nor provide preferential treatment to Plaintiffs. Finally, the

22

Settlement was reached following two settlement conferences and subsequent mediated

23

arms-length negotiations, following sufficient investigation and discovery that allowed

24

Class Counsel to act intelligently, and Class Counsel and Plaintiffs support the

25

Settlement as being in the best interests of the Class Members.

26

Accordingly, Plaintiffs respectfully request this Court grant Plaintiffs' Motion for

27

Final Approval of Class Action Settlement.

28

**FACTUAL AND PROCEDURAL BACKGROUND**

1

## A.     The Parties.

During the Class Period, Sunrise operates senior residential and assisted living communities, some 52 of which were or are located in various cities in California. Dkt. 1-1, ¶2; Declaration of Matthew J. Matern in Support of (1) Plaintiffs' Motion for Final Approval of Class Action Settlement and (2) Plaintiff's Motion for Attorneys' Fees and Costs and Enhancement Awards, ¶4. Mr. Van Cleave was employed as a non-exempt Activities & Volunteer Coordinator at Sunrise's La Jolla community from July 2016 through November 2018. Dkt. 74-8 [Declaration of Christian Van Cleave ¶¶2-4]. Ms. Schlieser worked in several non-exempt positions (including Marketing Assistant, Director of Community Relations, and Director of Sales) at Sunrise's Seal Beach community from May 2005 to February 2018. Dkt. 53-11 [Schlieser Decl. ¶¶2-3]; Dkt. 74-6 [Schlieser Decl. ¶2].

## B.     Procedural History.

On December 7, 2018, Van Cleave filed a Class and Collective Action against Sunrise in San Diego County Superior Court. Dkt. 74-13 [Declaration of Jean-Claude Lapuyade ¶7]. Following removal, Sunrise removed the case to the Southern District of California pursuant to the Class Action Fairness Act ("CAFA"). *Id*. Van Cleave filed a First Amended Collective and Class Action Complaint alleging claims under the FLSA and California Labor Code for alleged violation of the Unfair Competition Law, failure to pay overtime wages, failure to provide meal periods and rest breaks, failure to provide accurate wage statements, and failure to pay all wages due at time of termination. Dkt. 74-13 [Lapuyade Decl. ¶9].

On January 17, 2019, Ms. Schlieser filed a class and representative action against Sunrise in the Orange County Superior Court alleging claims for failure to provide required meal periods; failure to provide rest breaks; failure to pay overtime; failure to pay minimum wages; failure to pay all wages due upon discharge; failure to maintain required records; failure to provide accurate wage statements; violation of the UCL; and for penalties pursuant to PAGA. Complaint, Dkt. 1-4 [Exh. B to Allyn Decl.]; Matern

2

Decl. ¶6. Sunrise removed the case to this Court on March 6, 2019 under CAFA.[1] Dkt. 1; Matern Decl. ¶7.

On May 6, 2019, Mr. Van Cleave filed a complaint alleging claims pursuant to PAGA complaint in San Diego County Superior Court. Dkt. 74-13 [Lapuyade Decl. ¶11]. On October 5, 2020, the Court granted the *Van Cleave* parties' stipulated request to file a Second Amended Collective, Class and Representative Complaint. Dkt. 81, 82, 83.

## III.   SETTLEMENT

Magistrate Judge Paul L. Abrams held a global mandatory settlement conference for the *Van Cleave* and *Schlieser* actions on August 12, 2019 and Mr. Van Cleave and Sunrise participated in an Early Neutral Evaluation Conference with Magistrate Judge Allison H. Goddard in the Southern District on December 9, 2019. Dkt. 37; Matern Decl. ¶¶14, 16; Dkt. 74-13 [Lapuyade Decl. ¶12]. Prior to these conferences, Sunrise provided sample payroll data, wage statements and other records to permit the Parties to evaluate their respective positions. Matern Decl. ¶17. Plaintiffs retained an expert statistician to analyze Sunrise's data and records and prepared damages models. *Id.* The cases did not settle. *Id.*

The cases did not settle and the Parties engaged in formal discovery. Sunrise produced a large volume of documents, including a sample of payroll and timekeeping records, wage and hour policies, meal period and rest break policies and wage statements, and other employment documents. Matern Decl. ¶8. Sunrise agreed to let Ms. Schlieser use the data and documents that had been provided for the settlement

---

[1]  The *Schlieser* Action was transferred to this Court following the filing of Sunrise's Notice of Related Cases identifying several prior related matters, including *Shiferaw v. Sunrise Senior Living Management, Inc.*, No. 2:13-cv-02171-JAK-PLA; *Tameifuna v. Sunrise Senior Living Management, Inc.* [2:13-cv-06294-JKA-PLA, consolidated with *Shiferaw*]; and *Purnell v. Sunrise Senior Living Management, LLC* [8:10-cv-897-JAK-MLG]. Dkts. 9, 11.

discussions, as well as depositions and declarations from the *Shiferaw* action, to prosecute her claims, and Ms. Schlieser also propounded interrogatories. *Id.*

On September 19, 2019, Sunrise moved to dismiss Ms. Schlieser's complaint and to strike certain allegations. Dkt. 41. Before that motion was heard, Ms. Schlieser moved for class certification of a subset of the putative class. Dkt. 53; Matern Decl.¶¶9-11. Sunrise stipulated to certification of a Regular Rate class of Directors of Sales and Associate Directors of Sales relating to its alleged failure to include commissions and certain incentive wages in those employees' regular rate of pay. *Id.* Ms. Schlieser sought certification of a second Regular Rate class composed of Director of Sales, Associate Director of Sales, and Director of Sales & Marketing aimed at the alleged practice of calculating the overtime wages using the total number of hours worked instead of the legal maximum number of regular hours worked. *Id.* Ms. Schlieser also sought to certify a third Regular Rate class aimed at the alleged failure to include commissions and certain incentive wages for all non-exempt employees. *Id.* The motion was supported by over 400 pages of documentary evidence including declarations, payroll records, deposition testimony and other employment records. Dkt. 55-1 to 55-9; Matern Decl. ¶11.

The Parties continued discussing settlement and agreed to a combined mediation. Matern Decl. ¶15. In preparation, the Parties completed further informal discovery, including production of additional pay and time records for 4,536 employees representing 566,093 shifts and 133,676 workweeks. Matern Decl. ¶ 17. Plaintiffs' expert statistician used the additional data to prepare additional analyses of alleged violations and damage models. *Id.*

A full day mediation was held on February 24, 2020 with respected neutral Lisa Klerman. Matern Decl. ¶16. Still, the Parties were unable to reach a settlement. *Id.* However, settlement discussions continued and ultimately Ms. Klerman made a mediator's proposal which the Parties accepted on March 16, 2020. *Id.* The Memorandum of Understanding was signed on May 21, 2020. *Id.* The Settlement

4

1    Agreement was fully executed on June 30, 2020. Dkt. 74-2.

2         The mediation was conducted at arm's length and was adversarial. Matern Decl.

3    ¶18. The postures of the Actions, including Sunrise's pending motion to dismiss and Ms.

4    Schlieser's pending motion for class certification shows that the Parties were prepared to

5    litigate their positions vigorously through trial and appeal if a settlement could not be

6    reached. *Id.* Indeed, that posture of a pending dispositive motion and certification

7    proceedings are also substantial evidence that the Parties had sufficient information to

8    evaluate the claims and defenses in settlement discussions. *Id.*

9         The Plaintiffs and Class Counsel support the proposed Settlement as being in the

10   best interests of the class. Matern Decl. ¶24; Dkt. 74-9 [Zakay Decl. ¶25]; Dkt. 74-13

11   [Lapuyade Decl. ¶18]; 74-17 [Thompson Decl. ¶¶26-27. The amount of the Settlement

12   is the result of an informed and detailed analysis of Sunrise's potential liability of total

13   exposure in relation to the costs and risks associated with continued litigation. Matern

14   Decl. ¶¶21-24. Based on Plaintiffs' investigation, discovery, and expert analysis,

15   Plaintiffs were able to effectively negotiate the Settlement. *Id.*

16   **IV.   PRELIMINARY APPROVAL AND NOTICE TO THE CLASS**

17        On July 6, 2021, the Court granted preliminary approval of the Agreement and

18   directed that notice be sent to the Class. Dkt. 88. After updating the class list addresses,

19   on August 5, 2021 the Settlement Administrator mailed the Notice Packets to 11,566

20   Class Members. Declaration of Meagan Brunner ¶¶3-6. The Settlement Administrator

21   also set up a telephone number for inquiries and a website where Class Members could

22   download copies of the Court's July 6, 20021 order (Dkt. 88) and the Agreement.

23   Brunner Decl. ¶¶8-9. Of the Notice Packets mailed, 928 were returned and after

24   updating and remailing, only 85 Notice Packets were undeliverable. *Id.* ¶7. As of

25   September 10, 2021 (the response postmark deadline was September 4, 2021), the

26   Settlement Administrator received seven valid requests for exclusion, one dispute, and

27   no objections. *Id.* at ¶¶10-12.

28

## V.  SUMMARY OF SETTLEMENT

### A.  Definition of Settlement Class.

The "Class" or "Class Members" consist of all persons who were employed in non-exempt positions at Sunrise's California communities at any time during the Class Period (July 1, 2016 to June 15, 2020. Dkt. 74-2 [Agreement ¶¶ 6, 27]. The Class is comprised of 11,559 individuals. Matern Decl. ¶8; Brunner Decl. ¶¶ 3, 11.

### B.  Settlement Terms.

Under the proposed Agreement, the claims of all Class Members shall be resolved for $2,450,000.00 (the "Class Settlement Amount") which includes all Individual Settlement Payments, the PAGA Settlement Amount, the Settlement Administration Costs, Class Representative Enhancement Payments, Class Counsel's fees and costs. Dkt. 74-2 [Agreement ¶8]. Defendant's share of any applicable payroll and/or unemployment taxes will be paid separately. Agreement, ¶8. No portion of the Class Settlement Amount shall revert to Defendant or result in an unpaid residue. *Id.* ¶¶37, 57. There is no claim form required. *Id.* ¶56.

The Gross Settlement Amount shall be allocated as follows:

**1.  Individual Settlement Award**.  All Participating Settlement Class Members shall be eligible to receive a share of the Net Settlement Amount which means the portion of the Class Settlement Amount that remains after accounting for any Class Representative Enhancement Payments, the portion of the PAGA Settlement Amount payable to the LWDA, Settlement Administration Costs, and Class Counsel's fees and costs. *Id.* ¶14.

Sunrise will calculate individual amounts of under-payment of wages to Participating Settlement Class Members who held the positions of Director of Sales and Assistant Director of Sales during the Class Period in connection with the programming error that resulted in those individuals' commissions being temporarily inadvertently excluded from their regular rate of pay, estimated to be a combined $301,103. Matern

Decl. ¶ 22. Each of these individuals will receive the full calculated amount of wages. Dkt. 74-2 [Agreement ¶38(a)].

The Settlement Administrator will apportion the remainder of the Net Settlement Amount between Participating Settlement Class Members (including those who held the positions of Director of Sales and Assistant Director of Sales) based upon each individual's total number of points awarded, as follows:[2]

a.  Individuals who are currently employed by Sunrise as non-exempt will receive 2 points per shift worked during the Class Period. (4,356 people as of June 15, 2020.)

b.  Individuals who are former non-exempt employees of Sunrise will receive 3 points per shift worked during the Class Period. (7,386 people between July 1, 2016 and June 15, 2020.)

c.  Individuals (excluding Directors of Sales and Assistant Directors of Sales who received payments under ¶ 38(a)) who worked overtime hours during a pay period in which they also received any bonus will receive 5 points for each such instance. (4,359 people between July 1, 2016 and June 15, 2020.)

d.  All Participating Settlement Class Members will receive 10 points for each wage statement they received during the Class Period.  (11,566 people.)

e.  Individuals who are classified as part-time according to Sunrise's records will have their point totals reduced by ½ to account for their part-time status for the time period where they were classified as part-time.  (7,222 people between July 1, 2016 and June 15, 2020.)

f.  The value of each individual point will be determined by dividing the Net Settlement Amount by the total number of points awarded, resulting in the individual "Point Value."  Each Participating Class Member's Individual Settlement Payment will be calculated by multiplying that Participating Class Member's total number of points by the Point Value. Agreement ¶38(b).

The portions of Individual Settlement Payments for under-payment of wages to Directors of Sales and Assistant Directors of Sales will be allocated 100% as wages.

---

[2]  The data was provided by Sunrise. Matern Decl. ¶21.

7

Dkt. 74-2 [Agreement ¶59]. All other Individual Settlement Payments will be allocated as follows: 25% to settlement of wage claims and 75% to settlement of claims for interest and statutory penalties. *Id.*

      **2.**     **Class Representative Enhancement Payments.** Subject to Court approval, Plaintiffs each shall be paid an Enhancement Payment not to exceed $7,500.00 for their time and effort in bringing and presenting the Action and for providing Sunrise a broader release than other Class Members. *Id.* ¶¶7, 34; Matern Decl. ¶¶44-47.

      **3.**     **Class Counsel's Attorneys' Fees and Costs.** Subject to Court approval, Class Counsel shall receive an award of attorneys' fees in an amount not to exceed $816,666.00, which equals one-third (33-1/3) of the Class Settlement Amount, and reimbursement of litigation costs and expenses in an amount not to exceed $35,000. Agreement ¶¶2, 33. Plaintiffs' actual litigation costs remain at $22,722.86 as no additional costs were incurred since the grant of preliminary approval. Dkt. 88, p. 32.

      **4.**     **Payment to the LWDA.** Subject to Court approval, $40,000.00 from the Gross Settlement Amount will be allocated as penalties under PAGA, of which seventy-five percent (75%), or $30,000.00) will be paid to the LWDA. Agreement ¶36. The remaining twenty-five percent (25%) of the amount allocated toward PAGA penalties (i.e., $10,000.00) shall be part of the Net Settlement Amount and will be distributed to Participating Class Members as part of their Individual Settlement Payments. *Id.*

      **5.**     **Settlement Administration Costs.** Subject to Court approval, the Settlement Administration Costs of $55,000.00 shall be paid to Simpluris, Inc., the court-approved administrator, from the Class Settlement Amount. *Id.* ¶¶25-26; Brunner Decl. ¶17.

      **6.**     **Payroll Taxes.** Sunrise will pay the employer's share of payroll taxes additionally and separately from the Class Settlement Amount. Dkt. 74-2 [Agreement ¶31].

8

7. **Uncashed Checks.** For settlement checks returned as undeliverable or remaining un-cashed for more than one hundred twenty (120) calendar days after issuance, the funds will be tendered to the State Bar of California Justice Gap Fund. *Id.* ¶57.

C. **Releases.** Upon the Effective Date (as defined in the Settlement Agreement), the Settlement Class Members, other than those who submit timely requests for exclusion, will release and discharge Sunrise and the other Released Parties from all Released Claims, as defined in the Settlement Agreement. *Id.* ¶¶21, 22, 51-53, 69, 70.

In addition to the above release, Plaintiffs are providing a general release for all unknown claims and waive all rights and benefits under California Civil Code section 1542. Dkt. 74-2 [Agreement ¶53].

## IV. CLASS NOTICE HAS BEEN EFFECTUATED AND COMPORTS WITH RULE 23 AND THE REQUIREMENTS OF DUE PROCESS

Before final approval of a class action can issue, notice of the settlement must be provided to the class. Fed. R. Civ. P. 23(e)(1). Rule 23 requires the class receive "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Notice to the class must be "reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Saulic v. Symantec Corp.*, 596 F.Supp.2d 1323, 1327 (C.D. Cal. 2009).

In the Court's July 6, 2021 Order Re Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, the Court found that the Class Notice complies with Rule 23(e)(1)(B), as it "summarizes the terms of the settlement, advises each of the Putative Class Members of the estimated amount of his or her award and provides contact information for the Third Party Administrator," and "instructs Putative Class Members

9

1   how to file objections or to opt out of the settlement," and "the date and time of the

2   proposed final approval hearing." Dkt. 88, pp. 32-33.

3          The notice plan, as approved by the Court, has been fully implemented by the

4   Settlement Administrator. On August 5, 2021, after updating the class list addresses, the

5   Settlement Administrator mailed the Notice Packets to 11,566 Class Members, set up a

6   telephone number for inquiries and a website where Class Members could download

7   copies of the Court's July 6, 20021 order (Dkt. 88) and the Agreement. Brunner Decl.

8   ¶¶3-6, 8-9. Of the 11,566 Class Members, only seven Class Members, representing

9   0.06% of the Class, submitted valid Request for Exclusion Forms. *Id*. ¶11. No Class

10  Members objected to the Settlement. *Id*. ¶12.

11  **VI.    THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL**

12          Pursuant to Federal Rules of Civil Procedure, Rule 23(e), "The claims, issues,

13  or defenses of a certified class may be settled, voluntarily dismissed, or compromised

14  only with the court's approval."  Fed. R. Civ. Proc. 23(e).  In order to approve a final

15  settlement in a class action, the district court must find that the proposed settlement is

16  fundamentally fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(l)(c); *Staton v.*

17  *Boeing Co*.,327 F. 938, 952 (9th Cir. 2003).  In deciding whether to grant final approval

18  of a class action settlement, courts must "balance a number of factors:  the strength of

19  the plaintiff's case; the risk, expense, complexity, and likely duration of further

20  litigation; the risk of maintaining class action status throughout the trial; the amount

21  offered in settlement; the extent of discovery completed and the stage of the

22  proceedings; the experience and views of counsel; the presence of a governmental

23  participant; and the reaction of the class members to the proposed settlement." *Hanlon*

24  *v. Chrysler Corp*., 150 F.3d 101l, 1026 (9th Cir. 1998); *see also Staton*, 327 F .3d at

25  959. Courts also consider the arm's length nature of the settlement negotiations in their

26  analysis. *Aarons v. BMW of N. Am., LLC*, 2014 WL 4090564, at *10 (C.D. Cal. Apr.

27  29, 2014).

28

The Court possesses "broad discretion" in issuing a final determination that a proposed class action settlement is fair and "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  Courts in the Ninth Circuit have "long deferred to the private consensual decision of the parties." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (citing *Hanlon*, 150 F.3d at 1027). In the end, "[s]ettlement is the offspring of compromise; the question [the court] addresses is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."  *Hanlon*, 150 F.3d at 1027. In considering whether to grant final approval of a class action settlement, the Ninth Circuit has noted that "there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Synocor ERISA Litigation*, 516 F.3d 1095, 1011 (9th Cir. 2008).

### A.     The Strength of Plaintiffs' Case.

The benefits of settlement and a plaintiff's chances of success are typically evaluated together.  *See Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 488 (C.D. Cal. 2010) ("An important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement.") (internal quotation mark omitted).  Here, Plaintiffs thoroughly investigated the factual and legal bases for their claims. Matern Decl. ¶¶8, 17, 22. The proposed Settlement takes this into consideration, as well as the difficulty in establishing damages (assuming Plaintiffs were able to obtain certification and establish liability).

Under the proposed Agreement, 11,559 Class Members avoid the risks and obstacles to recovery and receive substantial benefits immediately. Within 31 calendar

11

days of the Effective Date of the Settlement, Class Members will be mailed their Individual Settlement Payments based on shifts worked, full or part-time status, and for Directors and Assistant Directors of Sales, overtime and bonuses. Agreement, ¶¶10, 11, 56(b). Assuming that the Court approves the proposed allocations, the average estimated Individual Settlement Payment is $130.68, and the highest estimated Individual Settlement Payment is $20,068.26. Brunner Decl. ¶14. The settlement has been well received by Class Members, none of whom objected to the settlement. Accordingly, this Settlement "guarantees a recovery that is not only substantial, but also certain and immediate, eliminating the risk that class members would be left without any recovery . . . at all." *Fulford v. Logitech, Inc*., 2010 U.S. Dist. LEXIS 29042, *8 (N.D. Cal. Mar. 5, 2010).

>   **B.** **The Risk, Expense, Complexity, and Likely Duration of Further Litigation.**

Another factor in assessing the fairness of the proposed settlement is the complexity, expense, and likely duration of this lawsuit had settlement not been achieved. *Officers for Justice*, 688 F.2d at 625. Because this litigation terminated before commencement of class certification, expert witness discovery, and trial preparation, this factor also favors settlement. *See Young v. Polo Retail, LLC*, 2007 WL 951821, *3 (N.D. Cal. Mar. 28, 2007).

Defendant vigorously litigated the case and expressed every intention of continuing its defense through class certification, trial, and appeal. Matern Decl. ¶23. Class Counsel has extensive experience in wage and hour class action litigation and knows from experience that any case involving wage and hour claims against a large corporate employer can, and often does, lead to costly litigation that goes on for years. *Id*. Absent settlement, the next steps in the case would include Plaintiff Schlieser's motion for class certification, another to be brought by Plaintiff Van Cleave, a possible defense motion for summary judgment, the exchange of expert discovery, trial

preparation, and then trial. *Id*. Considerably more risk, effort, and expense would be entailed in taking these steps.

Even if Plaintiffs prevailed through class certification, summary judgment, and trial, Defendants would almost certainly appeal, threatening a reversal of any favorable outcome and causing significant delays in obtaining any relief for Class Members. *See In re Portal Software Secs. Litig*., 2007 WL 4171201, *3 (N.D. Cal. Nov. 26, 2007) ("Additional consideration of increased expenses of fact and expert discovery and the inherent risks of proceeding to summary judgment, trial and appeal also support the settlement."); *Fulford*, 2010 U.S. Dist. LEXIS 29042, at *8 ("[L]iability and damages issues-and the outcome of any appeals that would likely follow if the Class were successful at trial-present substantial risks and delays for Class member recovery.").

Accordingly, this factor supports final approval of the settlement.

## C.   The Risk of Maintaining Class Action Status throughout the Trial.

If litigation were to proceed, Plaintiffs would face substantial risks. For example, Plaintiffs would seek certification and liability for the meal and rest period classes. However, Sunrise points to prior rulings by this Court in the related *Shiferaw* matter denying certification of regular rate, rounding and meal and rest period claims (although certain meal period classes based on rounding were certified). *Shiferaw* Dkt. 147. Sunrise would be expected to point to partial summary judgment in its favor on the *Shiferaw* plaintiffs' class claim alleging that Sunrise failed to include certain incentive compensation called "Spot Bonuses" in calculating the regular rate. *Shiferaw* Dkt. 210. Spot Bonuses are one of the items of compensation upon which Plaintiffs' regular rate claims are based in this case. Matern Decl. ¶23. These examples prove that both liability and certification are not given in this case.

Other substantial risks included the prospect that the Court has discretion to reduce PAGA penalties under California Labor Code section 2699, lengthy appeals, and the inconvenience, distraction, disruption, delay, expenditures attendant upon further litigation, and a recovery which is disproportionate to the potential benefits of continued

13

litigation. Matern Decl. ¶23-24. In contrast, because of the proposed settlement, Class Members will receive timely and certain relief and avoid the risk of an unfavorable judgment and a questionable appellate outcome. *Id.* Such a result is "preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citation omitted).

### D.     The Amount Offered in Settlement.

The next factor relevant to a consideration of the reasonableness of the settlement is the amount offered by defendant.  As the Ninth Circuit has noted, "It is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.  The proposed settlement is [thus] not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at p. 625 (emphasis in original).  Rather, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Id.* at p. 624 (citations omitted).  "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is...inadequate and should be disapproved.'" *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998).

The proposed settlement offers a substantial recovery to Class Members given the risks of pursuing this case through trial. For comparison, the *Shiferaw* case settled similar claims of approximately 16,300 Sunrise employees for $2,180,000. The settlement provides a gross settlement amount of $2,450,000 with an estimated Net Settlement Fund amount of $1,510,611,14 available to the 11,559 Class Members, with no amount reverting to Defendant who will also pay the employer's share of taxes separately. Each Settlement Class Member will receive a proportionate share of the settlement based on their work for Defendant during the Class Period. This is a significant recovery based on the risks of obtaining and maintaining class certification and establishing liability and damages at trial on the claims set forth in the Complaint.

14

1    Accordingly, this factor favors final approval of the settlement.

2    **E.    The Extent of Discovery Completed and the Stage of the Proceedings.**

3    Final approval is favored because substantial investigation and discovery were

4    completed prior to settlement. "'The extent of discovery may be relevant in determining

5    the adequacy of the parties' knowledge of the case.'" *See National Rural Telecom.*

6    *Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004).  "A court is more

7    likely to approve a settlement if most of the discovery is completed because it suggests

8    that the parties arrived at a compromise based on a full understanding of the legal and

9    factual issues surrounding the case.'" *Id*.  The greater the amount of discovery that has

10   been completed, the more the parties have "a clear view of the strengths and

11   weaknesses of their cases.'" *Young*, 2007 WL 951821, at *4.

12   Here, the Parties agreed to the Settlement after engaging in extensive

13   investigation and discovery. During the course of the litigation, Class Counsel (1)

14   moved for class certification; (2) retained an expert to analyze time and payroll data; (3)

15   propounded written discovery; and (4) based on this information prepared for mediation

16   and constructed damages models. Because Plaintiffs and Class Counsel were well-

17   informed regarding the strengths and weaknesses of their case at the time the

18   Settlement was reached, this factor weighs in favor of final settlement approval.

19   **F.    The Experience and Views of Class Counsel.**

20   This factor considers class counsel's experience and views about the adequacy of

21   the settlement. Reliance on such recommendations is premised on the fact that "parties

22   represented by competent counsel are better positioned than courts to produce a

23   settlement that fairly reflects each party's expected outcome in the litigation." *In re*

24   *Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

25   Class Counsel is qualified and experienced in handling complex wage and hour

26   class actions and has litigated scores of class action lawsuits involving wage and hour

27   issues in both state and federal courts. Matern Decl. ¶¶29-31. Indeed, Class Counsel

28   includes attorneys who represented the class in the *Shiferaw* case. Matern Decl. ¶20.

15

Through its investigation, review of discovery materials, litigation, mediation, and settlement, Class Counsel have a thorough understanding of this litigation and believe the Settlement is fair, adequate, and reasonable. Matern Decl. ¶25. This factor also favors final approval of the Settlement.

### G.     The Presence of a Governmental Participant.

This factor is neutral because no governmental entities participated in this case. *See Aarons*, 2014 WL 4090564, at *13.

### H.     Class Members' Reaction to the Proposed Settlement.

In evaluating the fairness, adequacy, and reasonableness of the settlement, courts also consider the reaction of the class to the settlement. *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003).  "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members." *Nat'l Rural Telecomms Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 528- 29 (C.D. Cal. 2004).

This factor further supports settlement approval because the Class Members' reaction to the Settlement has been extremely favorable.  The Settlement Administrator provided direct notice of the Settlement via First Class mail to 11,566 Class Members. Brunner Decl. ¶6.  Not a single Class Member submitted an objection to the Settlement. *Id*. at ¶12. Additionally, only seven Class Members, representing 0.06% of the Class, submitted valid exclusion requests. *Id*. ¶11.

Given the overall positive reaction by Class Members to the Settlement, final approval of the Settlement is proper.

### I.     Fair and Honest Negotiations.

Evidence that a settlement agreement is the result of genuine arm's length bargaining with a private mediator after factual discovery also supports a conclusion that the settlement is fair.  *Rodriguez*, 563 F.3d at p. 965 ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."). Here, after two settlement conferences and a mediation, Parties arrived at the proposed Settlement at

16

arm's length with the assistance of experienced wage-and-hour mediator Ms. Klerman, and only after a mediator's proposal. Accordingly, the arms'-length nature of the negotiations also supports a finding that the Settlement is fair, adequate, and reasonable.

## VII.    CONCLUSION

The Parties have negotiated a fair and reasonable settlement of a case that provides relief that likely would never have been realized but for this class action. Accordingly, final approval of the Settlement should be granted.


Dated: October 7, 2021                MATERN LAW GROUP, PC


By:    /s/ Matthew J. Matern
Matthew J. Matern
Scott A. Brooks
Class Counsel and Attorneys for plaintiff Nancy Schlieser,

Date:  October 7, 2021

SOMMERS SCHWARTZ, P.C.


By:    /s/ Jason J. Thompson
Jason J. Thompson
Class Counsel and Attorneys for plaintiff Christian Van Cleave

17